## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2014-CA-01298-COA

GREGORY CAMPBELL                                                                 APPELLANT

v.

CATHERINE ANN WATTS                                                              APPELLEE

DATE OF JUDGMENT:              06/19/2014
TRIAL JUDGE:                   HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:     DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       JERRY WESLEY HISAW
                               VANESSA WINKLER PRICE
ATTORNEY FOR APPELLEE:         A.E. (RUSTY) HARLOW JR.
NATURE OF THE CASE:            CIVIL - CUSTODY
TRIAL COURT DISPOSITION:       GRANTED MOTHER'S PETITION FOR
                               MODIFICATION
DISPOSITION:                   REVERSED AND RENDERED: 10/20/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ISHEE, CARLTON AND FAIR, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Greg Campbell appeals the DeSoto County Chancery Court's order awarding his ex-wife, Catherine Watts, joint legal and physical custody of their son, Gavin. We conclude that the chancellor erred in finding a material change in circumstances warranting a modification of custody. We reverse and render the chancellor's judgment.

### FACTS

¶2.     Greg and Catherine divorced in 2004. They shared joint legal and physical custody of Gavin until 2010, when Greg filed a petition for modification. Based on a finding of a material change in circumstances, the chancery court granted Greg's petition and awarded

him physical custody of Gavin, with the parties continuing to share joint legal custody.

¶3.    Three years later, Catherine filed a petition for citation of contempt and for modification. Catherine claimed that Greg was in contempt for withholding visitation. She also sought custody of Gavin. Greg filed an answer, as well as a counter-petition for contempt and for modification. He claimed Catherine was in contempt for nonpayment of child support; he also requested an increase in child support.

¶4.    The chancellor held a trial on June 6, 2014. She denied Greg and Catherine's claims for contempt but granted Catherine's petition for modification, awarding each of the parties joint legal and physical custody. She also ordered Greg to pay Catherine $300 a month in child support and to continue to maintain health insurance on Gavin. Greg now appeals.

## STANDARD OF REVIEW

¶5.    This Court employs a limited standard of review on appeals from chancery court. *Corp. Mgmt. Inc. v. Greene Cnty*., 23 So. 3d 454, 459 (¶11) (Miss. 2009). Under that standard, this Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard." *Id*. Questions of law are reviewed de novo. *Id*.

## DISCUSSION

¶6.    A modification of custody is warranted when the moving parent successfully shows "(1) that a material change of circumstances has occurred in the custodial home since the

most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Powell v. Powell*, 976 So. 2d 358, 361 (¶11) (Miss. Ct. App. 2008) (citing *Giannaris v. Giannaris,* 960 So. 2d 462, 467-68 (¶10) (Miss. 2007)). The chancellor must consider the totality of the circumstances when determining whether such a material change in circumstances has occurred. *Creel v. Cornacchione*, 831 So. 2d 1179, 1183 (¶15) (Miss. Ct. App. 2002). If a material change in circumstances in the custodial home is found to have occurred, the chancellor "must separately and affirmatively determine that this change is one which adversely affects the child[]." *Bredemeier v. Jackson,* 689 So. 2d 770, 775 (Miss. 1997) (citation omitted). After finding an adverse material change, "the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest." *White v. White,* 26 So. 3d 342, 351 (¶28) (Miss. 2010). But "in the absence of a material change in circumstances in the custodial home, the adverse effect and best-interest (*Albright*) factors need not be considered." *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1016 (¶36) (Miss. 2012).

¶7.    On appeal, Greg argues that this case should be reversed because the chancellor erred in modifying custody because she did not specify a material change in circumstances and adverse consequences of such change, nor did she conduct an *Albright* analysis based on the alleged material change. *See Lowery v. Mardis*, 867 So. 2d 1053, 1057 (¶15) (Miss. Ct. App. 2004) (stating that, in the event the chancellor fails to properly discuss the *Albright* factors, the modification of custody should be reversed). Conversely, Catherine argues that

3

the modification is properly based on Greg's controlling behavior, Gavin's testimony that Greg's behavior hurts his feelings, and Gavin's "rebellious" behavior.

¶8.    Both Greg and Catherine are remarried.  Both have children born after their divorce. At trial, Greg testified that he had been remarried for about five years, so his present wife, who also testified, was in his home when he was awarded physical custody.  Greg also testified that he did not like Gavin staying over at Catherine's longer than required because the "environment is [not] fit for him."  For example, he claimed that Catherine and her new husband had parties that were inappropriate for children.  Greg further stated that he wanted the best for his son and was simply following the court-ordered visitation schedule.

¶9.    Gavin testified that he wanted to have visitation one week with his father and one week with his mother.  He also testified that his mother and stepfather had weekly watch parties for their favorite television show, *The Walking Dead*, but there was no smoking or drinking.  Gavin stated that his father rarely let him spend extra time at his mother's house. When asked on cross-examination if his father was doing anything mean to him at home, Gavin said no.

¶10.  Catherine testified that, although Greg was strictly complying with the court-ordered visitation schedule, she wanted him to be more liberal with her visitation.  She further explained that Greg rarely let Gavin stay longer at her home than allowed by the court order. Catherine stated that Greg did not consult her on matters related to their joint legal custody, including Gavin's education, activities, and medical issues.  She also said that Greg was

4

controlling and that Gavin was afraid of him, but she otherwise provided no specific evidence of any harmful behavior.

¶11.  Greg's wife of five years, Ashley, testified that Gavin usually had a very quiet demeanor.  But when he would return from his mother's, he was "a little more rebellious" for about a day.  She explained that it was more of an "adjustment period" for Gavin, stating that "Greg usually . . . had to bring [Gavin] back to our rules . . . ."

¶12.  In the chancellor's bench opinion, she stated that Greg needed to include Catherine in the decision making, per the joint-legal custody arrangement.  The chancellor also urged Greg to allow Gavin more time at Catherine's when he asks to stay there a bit longer.  In modifying custody, the chancellor stated Gavin wanted to alternate time with both parents. She further stated that Gavin's attitude when he returns to his father's is "just the bubbles of something boiling under the surface."  The chancellor explained that she wanted to prevent Gavin from acting out in the future.

¶13.  "Where there is no specific identification of the alleged change in circumstances, this Court is placed in the position of attempting to guess what the chancellor determined was a proper basis for a change in custody." *Sturgis v. Sturgis,* 792 So. 2d 1020, 1025 (¶19) (Miss. Ct. App. 2001).  Despite Catherine's claims, the record reflects that she failed to present any proof that Greg's living situation had changed at all since the modified divorce decree was entered, that it had adversely affected Gavin, or that Gavin was in any danger.  *See Giannaris,* 960 So. 2d at 467-68 (¶10) (modification must be based on conduct of the parent

5

who poses a danger to the mental or emotional health of the child). In fact, Catherine testified that she had no problems with Greg's home.

¶14. In modifying custody, the chancellor emphasized Gavin's testimony, where he said he would like to alternate time with both parents. Gavin's election alone, as the separate opinion admits, does not rise to the level of a material or substantial change of circumstances. *In re E.C.P.*, 918 So. 2d 809, 824 (¶62) (Miss. Ct. App. 2005); *see also Best v. Hinton*, 838 So. 2d 306, 308 (¶8) (Miss. Ct. App. 2002) (modification of custody based upon the child's preference was reversed because "such an expression, supported by nothing more, " is not "the type of adverse material change in circumstance that would warrant a custody modification"). The chancellor also expressed concern about Gavin's "rebellious" behavior. There is no evidence in the record detailing such behavior or showing an adverse effect on Gavin. Gavin's stepmother, Ashley, explained that any "rebellious" behavior quickly went away after twenty-four hours of Greg's return to his father's home. And Gavin testified that his father was not doing anything mean to him in the home. Gavin further testified that he made good grades in school and had a good relationship with his stepmother and younger brother (Greg and Ashley's son).

¶15. The separate opinion would hold that custody modification can be based on a thirteen-year-old's expression of his preferences and his reasoning supporting them. We would note, however, that in 2006, Mississippi Code Annotated section § 93-11-65 (1)(a) was amended to say "the chancellor *may* consider the preference of a child of twelve (12) years of age or

older" in a custody determination, as opposed to the previous language stating that the chancellor *shall* consider the preference of the child. See Miss. Code Ann. § 93-11-65 (Rev. 2013) (emphasis added); Miss. Code Ann. 93-11-65 (Rev. 2004). "Before this amendment, a child over the age of twelve had the 'privilege' of choosing which parent to live with, as long as both parents were fit and it correlated with the best interest of the child, instead of merely being able to express that preference, as the statute currently reads." *Phillips v. Phillips*, 45 So. 3d 684, 693 (¶28) (Miss. Ct. App. 2010). Now, a child's preference is recognized as only one of the *Albright* factors, similar to the "tender years doctrine" (or the maternal preference rule), which was given similar statutory weight at one time. *See Albright v. Albright* 437 So. 2d 1003, 1004-05 (Miss. 1983) (acknowledging the recent "re-evaluation" and "weakening process" of the doctrine).

¶16.     The dissent also emphasizes the fact that Greg's testimony failed to show how Catherine's home environment was unfit, and that this finding, in addition to Gavin's request to spend more time with both parents, supports the chancellor's modification. But it is *Catherine's* burden "to show by a preponderance of the evidence that a material change in circumstances has occurred in the custodial [parent *Greg's*] home." *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003). And this change must adversely affect Gavin's welfare. *Id*.

¶17.     Greg and Catherine were originally granted joint physical custody after their divorce in 2004. In 2010, Greg was granted physical custody. Three years, later Catherine petitioned

7

for joint physical custody. So this will be the third time Greg's parents have sought involvement of the court in his custodial arrangements. The separate opinion submits that Gavin's hurt feelings, as explained in his testimony and in conjunction with an expressed "preference" for alternate weekly visitation with both parents, are "adversely affecting" him and justify a change in his custody. But "[i]t is foreseeable, indeed expected, that as a consequence of divorce a child will experience changes in his or her circumstances and experience anxiety as a result of the disruption of the family unit. Divorce has consequences which are often adverse, particularly for younger children." *Lambert v. Lambert*, 872 So. 2d 679, 684 (¶19) (Miss. Ct. App. 2003). When considering initial custody arrangements or a modification of custody (whether months or years later), chancellors should not change custody based on these consequences without sufficient justification. *Id*. The noncustodial parent must prove that the "mental and emotional well-being of the child [is in] danger as a result of living with the custodial parent." *Id*. at 685 (¶26). Catherine did not.

¶18. Rather than modify custody, however, the chancellor could have easily modified the visitation schedule based on the evidence of record (particularly Gavin's testimony). To modify visitation, "[a]ll that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interests of the children" that it be modified. *Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986). Although Catherine petitioned to modify custody, in her testimony she specifically asserted that she wanted Greg to be more liberal with her visitation. The testimony of Greg, Catherine, and

8

Gavin reflects that the visitation schedule at the time of the hearing clearly was not working. And that evidence as discussed in the chancellor's ruling, which emphasized Gavin's need to have an improved relationship with both of his parents, may have been sufficient to support a grant of more liberal visitation to Catherine. *See Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994) (stating that the chancellor's consideration of visitation always includes recognition of the child's need to maintain a loving and healthy relationship with the noncustodial parent). Modifying visitation would have allowed the chancellor to grant Catherine and Gavin's request for more time together, without weakening the material change in circumstances standard long required for modification of custody of children.

¶19. As stated in *Ballard v. Ballard*, 434 So. 2d at 1357, 1360 (Miss. 1983), a change in custody is a "jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental and emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody." The separate opinion correctly notes that Greg strictly adhered to the court order, keeping Gavin from spending any extra time with Catherine. The chancellor characterized Greg's behavior as unreasonable. Gavin testified that his dad's behavior in strictly honoring the court order hurt his feelings. While his behavior may justify a modification of visitation, we cannot find that it amounts to a material change in Greg's home that has adversely affected Gavin.

¶20. After careful review, we find the record does not support the finding of a material

9

change in circumstances in the custodial home sufficient to warrant a change in custody. Accordingly, we reverse and render the judgment of modification.

¶21.    **THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS REVERSED AND RENDERED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

    **LEE, C.J., BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND  DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING AND GRIFFIS, P.JJ., AND JAMES, J.**

    **WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22.    I agree with the majority that the order modifying custody must be reversed because the chancellor failed to discuss the *Albright* factors.[1]   However, I conclude that the chancellor's finding of a material change in circumstances is neither manifestly in error nor legally erroneous.[2]  Therefore I would remand rather than render.

¶23.    As the majority correctly states, when, as in this case, "there is no specific identification of the alleged change in circumstances, this Court is placed in the position of attempting to guess what the chancellor determined was a proper basis for a change in custody."[3]  However, in the case, the basis of the chancellor's ruling is fairly clear from the record.  It starts with the testimony of the parties' son, Gavin, who testified that he would like to alternate weeks with his parents, one week with his dad and one week with his mom.

---

[1] *See Lowery v. Mardis*, 867 So. 2d 1053, 1057 (¶¶17-18) (Miss. Ct. App. 2004).

[2] *See Powell v. Ayars*, 792 So. 2d 240, 243 (¶6) (Miss. 2001).

[3] *Sturgis v. Sturgis*, 792 So. 2d 1020, 1025 (¶19) (Miss. Ct. App. 2001).

Gavin was three years old at the time of his parents' divorce in 2004 and was nine years old the last time the chancery court addressed the issue of his custody in 2010. He had turned thirteen by the time of the hearing and order at issue in this appeal, and he will be almost fifteen years old by the time this Court's decision is handed down.

¶24.    Gavin testified under oath that his desire to alternate weeks was not born out of any grievance against his dad. Nor did he think that he could "get by with more stuff at [his] mom's." Nor had his mom promised him anything as an inducement. Rather, he wanted to alternate weeks because he wanted to spend more time with his mom and his three (now four) siblings or half-siblings who live with her and with whom he is "close." Gavin testified that on occasions he had asked his dad to allow him to spend an extra couple of hours at his mom's house because, for example, he wanted to see his half-brother (whose own visitation schedule sometimes conflicts with Gavin's) or he wanted to stay for a dinner with his grandmother. Gavin testified that his dad's answer was always "no" and that his dad often said that he could not stay longer because of the "court order." (The prior court order, of course, did not *prohibit* additional visitation—it just did not *require* it.) Gavin testified: "He doesn't understand . . . . He's trying to . . . hurt my mom, but he's also hurting me too." (In contrast, Gavin testified that his mom had allowed him to go on vacation with his dad even though it conflicted with her visitation.) Gavin testified that he had tried to talk to his dad about the issue and his feelings, but his dad was unwilling to talk about it.

¶25.    Greg's testimony essentially confirmed Gavin's. For instance, when no one picked

11

Gavin up from school one day because of a misunderstanding, Greg refused to allow Catherine, who lives nearby, to pick him up, even though that meant that Gavin had to wait at the school longer. When questioned about the incident, Greg testified as follows:

Q. Why didn't you want her to pick him up that day?

A. I don't think her environment's fit. I've said that multiple times.

Q. Period. You -- Absolutely, your position is he does not need to be exposed to his own mother one more minute than he has to be?

A. Yes, in a way.

Q. Well yes or no?

A. Yes, I feel that way.

¶26. The remainder of Greg's testimony confirmed that he was unwilling to consider any request by Gavin to spend "one more minute" with Catherine beyond what was mandated by court order. He admitted, for example, that he had never allowed Catherine to pick Gavin up from school, even though she apparently lives less than five minutes from the school. And while Greg did indeed repeat a number of times that the "environment" at Catherine's house was not "fit," he was unable to articulate what this meant. When asked by the chancellor to explain, he responded, "Her environment at her house. Her beliefs. Everything that goes on." He finally mentioned Catherine's tattoos and that her new husband owns a tattoo parlor as issues. However, any claim of unfitness was unsubstantiated on the record. Gavin testified that Catherine lived in a neighborhood of single-family homes where there were other kids to play with, her home was less than ten minutes from Greg's and in the same

12

school district, and Greg admitted that he had never even been inside Catherine's house. This is all relevant not because *the law* saddles Greg with any burden to prove that Catherine's home is unfit (*see ante* at ¶16) but only because *Greg* inserted the issue into the case in an effort to justify his actions. Thus, the lack of evidence to support Greg's assertions was relevant to the chancellor's evaluation of his conduct and credibility.

¶27.    After hearing the witnesses' testimony and judging their credibility,[4] the chancellor concluded, in the course of her oral ruling, that there was no evidence that either Catherine's home or the environment there was unfit, that Greg's actions and his justifications for them were unreasonable ("bullcrap") and were hurting Gavin, that Gavin needed a relationship and to spend time with both parents, and that it was appropriate to modify custody before Gavin came to further resent the unnecessary restrictions that Greg was placing on Gavin's time with his mom and her family. The chancellor commented that Gavin was "more mature than either one of" his parents and that his preference derived from his love for both of them and his siblings. I submit that these findings were sufficient to support the chancellor's finding that a material change of circumstances that adversely affected Gavin had occurred, are supported by substantial evidence, and are not manifestly erroneous.

¶28.    As the majority points out, a "child's expression of preference . . . , *supported by nothing more*," is not "the type of adverse change in material circumstances that would

---

[4] *See Powell*, 792 So. 2d at 243 (¶6) ("It is for the chancellor to determine the credibility and weight of evidence.").

13

warrant a custody modification." *Best v. Hinton*, 838 So. 2d 306, 308 (¶8) (Miss. Ct. App. 2002) (emphasis added).  But the chancellor certainly is entitled to *consider* as part of her findings the sworn testimony and preference of "a child, of some age over twelve years," to the extent that the child can "articulate compelling reasons as to why a change of custody would be in [his] best interest." *Id.* at 309 (¶11).  Furthermore, "[t]he concept" of a material change in circumstances adversely affecting the child "is intended to encompass its broadest possible meaning in order to protect children," including changes that negatively impact the "child's mental and emotional well-being." *Marter v. Marter*, 914 So. 2d 743, 748-49 (¶14) (Miss. Ct. App. 2005) (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997)).

¶29.    The majority, having read the transcript, finds that only "Gavin's hurt feelings" are involved.    However, the chancellor—having personally observed Gavin, Greg, and Catherine[5]—was impressed with Gavin's maturity, she found his testimony credible, and, although perhaps her findings could have been more specific, it is clear that the chancellor believed that the issues Gavin articulated amounted to legitimate harm to his emotional well-being, not just hurt feelings.[6]  Even if I might not have reached the same conclusion—which

---

[5] "This Court gives deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *McNeese v. McNeese*, 119 So. 3d 264, 275 (¶32) (Miss. 2013) (internal quotation marks omitted).  "[S]itting as an appellate court reviewing a cold record, we are not in a position to second-guess the chancellor's interpretation of something as complex and personal as the relationship between [parents] and [their] teenage [children]." *Blakely v. Blakely*, 88 So. 3d 798, 802 (¶11) (Miss. Ct. App. 2012).

[6] In her ruling from the bench, the chancellor concluded that "the fact that he is expressing to us that he's hurt by being kept away from his mom and being so restricted

14

I am unable to say with confidence, since I was not there—I do not believe that the chancellor's finding of a material and adverse change in circumstances was manifestly or clearly erroneous.

¶30.   Nor, contrary to what the majority suggests, did the chancellor base her ruling on the typical "anxiety" that children feel as a "foreseeable, indeed expected, . . . consequence of divorce" itself. *Ante* at ¶17 (quoting *Lambert v. Lambert*, 872 So. 2d 679, 684 (¶19) (Miss. Ct. App. 2003)).   In *Lambert*, this Court reversed a ruling granting a motion to modify custody that was filed only *three months* after the parties' divorce. *Lambert*, 872 So. 2d at 682 (¶10).  And in that case, the child's anxiety was caused by the custody dispute itself. *Id.* at 686 (¶27).  Here, in contrast, the chancellor found a change in circumstances based on avoidable conflict that arose nine years after the parties' divorce. *Lambert* is simply inapposite.

¶31.   I agree with the majority that the chancellor easily could have modified the visitation schedule based on the evidence in the record,[7] but that is not a reason for reversal.  I also agree that we must reverse because the *Albright* factors were not discussed, but for the reasons explained above I would remand rather than render.

**IRVING AND GRIFFIS, P.JJ., AND JAMES, J., JOIN THIS OPINION.**

from her, and that he is feeling some resentment . . . is just the bubbles of something boiling under the surface."

[7] However, an order that "in essence modified . . . custody" while purporting to address only visitation would have been subject to the same legal standards as a modification of custody. *Johnson v. Johnson*, 913 So. 2d 368, 371 (¶11) (Miss. Ct. App. 2005).

15