# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00465-COA

**RITA BRADLEY**                                                                          **APPELLANT**

**v.**

**JOHN DONALD MOTES**                                                                    **APPELLEE**

DATE OF JUDGMENT:             02/12/2015
TRIAL JUDGE:                  HON. DAWN H. BEAM
COURT FROM WHICH APPEALED:    FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       BRANDON LARUE BROOKS
ATTORNEY FOR APPELLEE:        ALEXANDER IGNATIEV
NATURE OF THE CASE:           CIVIL - CUSTODY
TRIAL COURT DISPOSITION:      MODIFIED PHYSICAL CUSTODY OF ONE
                              OF THE PARTIES' TWO MINOR
                              CHILDREN TO THE APPELLEE, WHILE
                              KEEPING PHYSICAL CUSTODY OF THE
                              OTHER CHILD WITH THE APPELLANT
DISPOSITION:                  AFFIRMED: 04/04/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Rita Bradley appeals the chancellor's modification of custody. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. Rita Bradley and John Donald Motes were divorced in Hamilton County, Tennessee, on February 9, 2009. Rita was awarded primary custody of their two minor children, JHM and LHM.[1] Both Rita and John are now remarried. Rita currently resides in Petal,

---

[1] For privacy purposes, we have used initials for the names of the minor children.

Mississippi, and John resides in Pelham, Alabama.

¶3. On August 11, 2009, John filed a complaint in the Chancery Court of Forrest County, Mississippi, and requested a modification of custody of the two minor children, as well as other relief. During a hearing on May 1, 2012, the parties agreed that John's request for modification of custody would be held in abeyance and custody of both minor children would remain with Rita until such time as John renewed his request. A judgment was subsequently entered April 8, 2013.

¶4. On September 23, 2013, John filed a petition to modify child custody based on various grounds. A two-day trial was heard by the original chancellor on May 15, 2014, and June 4, 2014. On June 4, 2014, after she had spoken with the minor children, the chancellor advised the parties about a comment JHM had made and asked if they wanted her to recuse. Rita advised that she wanted the chancellor to recuse. As a result, the chancellor stated she would recuse.

¶5. On June 5, 2014, the chancellor entered a temporary order modifying custody. The chancellor awarded primary custody of LHM to John for the remainder of the summer. Primary custody of JHM remained with Rita. Thereafter, on July 11, 2014, the chancellor entered an order of recusal, and the case was reassigned.

¶6. On July 31, 2014, the newly assigned chancellor entered a temporary order, which revised the earlier temporary order entered by the original chancellor. The newly assigned chancellor declined to modify custody of LHM on a temporary basis and found that the judgment entered on April 8, 2013, would remain in effect until trial.

¶7. The trial was held on September 3, 2014. At that time, JHM was fifteen years old, and LHM was fourteen years old. The parties stipulated that JHM elected to live with Rita, and LHM elected to live with John. In his petition to modify child custody, John sought custody of both JHM and LHM. However, at trial, John advised that he was seeking modification of custody of LHM only.[2]

¶8. By judgment entered September 11, 2014, the chancellor found that John's allegations for modification of custody were meritless, but ultimately determined "that the ongoing medical and emotion[al] problems both children [were] going through [was] a material change in circumstances that adversely affect[ed] the minor children and it [was] in their best interest that custody be changed." The chancellor modified custody and awarded physical custody of LHM to John. Physical custody of JHM remained with Rita.

¶9. Rita subsequently filed a motion to set aside or reconsider the judgment, which was denied by the chancellor on February 12, 2015. The chancellor did, however, set a visitation schedule, which allowed JHM and LHM to see each other every weekend.

¶10. Rita now appeals and argues: (1) the original chancellor erred in modifying custody after recusal, (2) the separation of the minor children is not in their best interests, (3) the extensive litigation, which adversely affected the children, was caused by John, and (4) the

---

[2] John clarified that although he would like custody of both LHM and JHM, JHM has stated that he wants to live with his mother. When asked why he was no longer pursuing custody of JHM, John explained as follows, "I just want him to be happy. If he's going to be happier [with Rita] than he is [with me] and he's going to be more well adjusted than forcing him to be somewhere, then I'm all for it."

chancellor erred in performing an *Albright*[3] analysis.

STANDARD OF REVIEW

¶11.   "[We] will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Campbell v. Watts*, 192 So. 3d 317, 318 (¶5) (Miss. Ct. App. 2015).  "Questions of law are reviewed de novo." *Id.*

ANALYSIS

I.      *Recusal*

¶12.   Rita first argues the original chancellor erred in modifying custody after she announced that she would recuse.  We find this issue is moot since the temporary order entered by the original chancellor was subsequently revised by the newly assigned chancellor.

II.     *Modification of Custody / Separation of Siblings*

¶13.   Rita next argues that the separation of JHM and LHM is not in their best interests.  In other words, Rita argues the chancellor erred in modifying custody.

¶14.   A modification of custody is warranted when the moving parent shows "(1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Id.* at (¶6).  "The chancellor must consider the totality of the circumstances when determining whether such a material change in circumstances has

---

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

occurred." *Id*. at 319 (¶6). "The concept [of a material change in circumstances adversely affecting the child] is intended to encompass its broadest possible meaning in order to protect children," including changes that negatively impact the child's "mental and emotional well-being." *Marter v. Marter*, 914 So. 2d 743, 748 (¶14) (Miss. Ct. App. 2005).

¶15. "After finding an adverse material change, 'the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest.'" *Campbell,* 192 So. 3d at 319 (¶6) (quoting *White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010)). Although "[we have] never adopted any per se rule to the effect that children should not be separated . . . in the absence of some unusual and compelling circumstance dictating otherwise, it is not in the best interest of children to be separated." *Sellers v. Sellers*, 638 So. 2d 481, 484 (Miss. 1994).

¶16. The chancellor relied heavily on medical records introduced at trial as Exhibit 12. The medical records show JHM has significant behavioral issues, with diagnoses of attention deficit hyperactivity disorder, bipolar disorder, and oppositional defiant disorder. The medical records further show that on at least one occasion, JHM became very aggressive toward LHM and Rita. In March 2013, JHM was suspended from school and was ultimately enrolled in an alternative school beginning in January 2014.

¶17. With regard to LHM, the medical records show that in April 2014, LHM expressed a desire to go live with John.[4] The medical records further show that in early May 2014, LHM was "having excessive emotional and behavioral issues after transitioning back from

_____

[4] The court record indicates LHM elected to live with his father as early as 2011.

5

his father's house." LHM was diagnosed with adjustment disorder with mixed emotional features, which, according to his counselor, "began due to the family situation between his mother and father." Thereafter, the medical records note that in July 2014, LHM was "having a good summer with his father."

¶18. In addition to the medical records, Rita testified that LHM showed signs of depression as a result of "[his] transitioning back and forth between us" and "the things that JHM went through." Notably, both Rita and John testified that LHM does not like confrontation. Rita stated LHM likes everything to be smooth and acknowledged that things are not always smooth, especially if JHM is involved. Although Rita testified that LHM prefers John's house because he has "unlimited electronic time," John testified that LHM prefers his house because it is peaceful.

¶19. Rita asserts JHM and LHM "have a very strong relationship as brothers" and "keeping them separated would most certainly have an adverse impact on the relationship between siblings." While we acknowledge a strong preference for keeping siblings together, nothing in the testimony or medical records suggests that the separation would adversely affect the relationship between JHM and LHM. At no time during the five years of counseling did JHM advise his counselor that he would be upset if he and LHM were separated. Instead, JHM advised his counselor on numerous occasions that he simply wanted the custody dispute between his parents to be over.

¶20. Additionally, while LHM lived with John over the summer, JHM had the opportunity to visit "at [JHM's] election." However, JHM visited only twice. Rita acknowledged that

6

JHM did not spend every weekend he was supposed to with John over the summer since "LHM doesn't like the bickering and arguing that continuously takes place while JHM is there with his dad." Thus, it appears that while JHM and LHM enjoy their time together, they are content with the separation.

¶21.   We find the chancellor's finding of an adverse material change is supported by substantial evidence. Although the chancellor did not specifically cite any unusual or compelling circumstances in support of her decision to separate the siblings, she conducted an *Albright* analysis and based her decision on the medical records and the trial testimony.[5] Moreover, the visitation schedule allows the boys to see each other every weekend, and encourages "any and all other visitation as mutually agreed upon."

¶22.   Based on our review of the record, we cannot say the chancellor was manifestly wrong or clearly erroneous. Accordingly, we affirm.

### III.   *Extensive Litigation*

¶23.   Rita further argues the extensive litigation, which adversely affected the children, was caused by John. Rita asserts "the court's concern about the repeated and long-lasting litigation between the parties and its effect on the boys should not be held against Rita as she

---

[5] During the hearing on the motion to reconsider, the chancellor stated as follows:

> I don't enjoy splitting children. But I cannot hold one child back. I feel like that in the long run, it is in the best interest of the children to do this . . . . I went by what was in the records. Y'all talked about how they were totally different children, and that was part of the struggle with it. One child has been in alternative school; whereas, the other one was in regular school. These cases are so difficult, and the Court has broad discretion. I looked at the *Albright* factors. I weighed both kids together . . . But I have tried to do absolutely what I believe to be in both of these boys['] best interest . . .

7

has not been the one repeatedly initiating the proceedings to bring this about."

¶24. A review of the record clearly shows both parties contributed to the extensive litigation. Thus, we find this issue is meritless.

*IV.* Albright *Analysis*

¶25. Rita last argues the chancellor erred in performing an *Albright* analysis since "[n]o evidence whatsoever was presented" of an adverse material change. However, we have determined that the chancellor's finding of an adverse material change was supported by substantial evidence. As a result, it was proper for the chancellor to perform an *Albright* analysis to determine whether modification was in the best interests of the children. *Campbell,* 192 So. 3d at 319 (¶6). The chancellor considered the *Albright* factors and determined that it was in LHM's best interest to live with John and for JHM to remain with Rita.

¶26. We find the chancellor's *Albright* analysis was proper and supported by substantial evidence. Moreover, we find the chancellor's decision to modify custody of LHM was not clearly erroneous or manifestly wrong. We therefore affirm.

¶27. **THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.**