# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01799-COA

**AMY VOSS**                                                                 **APPELLANT**

**v.**

**DAVEN JOSEPH DOUGHTY**                                          **APPELLEE**

DATE OF JUDGMENT:              12/07/2016
TRIAL JUDGE:                  HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       MARGARET ANNA REID
ATTORNEY FOR APPELLEE:        DAVEN JOSEPH DOUGHTY (PRO SE)
NATURE OF THE CASE:           CIVIL - CUSTODY
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              RENDERED IN PART - 04/10/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     In November 2014, the DeSoto County Chancery Court granted Amy Voss and Daven Joseph Doughty joint legal custody of their daughter (Aqua), granted Voss physical custody, and granted Doughty visitation. A little over one month later, Voss filed a petition to modify visitation and to hold Doughty in contempt. Doughty answered and filed a counterclaim for modification of custody or visitation and for contempt. The chancellor denied Voss's petition, granted Doughty's request to modify custody, ordered the parties to share joint physical custody of Aqua, and terminated Doughty's child support obligation. On appeal, Voss argues that the chancellor erred by (1) modifying custody, (2) denying her petition to modify visitation, and (3) declining to find Doughty in contempt.

¶2.    We hold that custody should not have been modified because there was no evidence of a material change in circumstances since the prior custody order. Therefore, we reverse and render the modification of custody. We also reverse and render the chancellor's sua sponte modification of child support, which was based on the erroneous modification of custody. We affirm the chancellor's denial of Voss's requests to modify visitation and to hold Doughty in contempt.

### FACTS AND PROCEDURAL HISTORY

¶3.    Aqua was born in November 2014. Doughty is Aqua's father, but he and Voss were never married. Doughty is now married to another woman, Ashley. They live with Ashley's mother and a friend, Trey Brady, in a duplex in Senatobia. For a time after Aqua was born, Voss and Aqua also lived in the duplex with Doughty, Ashley, Ashley's mother, and Brady. However, Voss and Aqua subsequently moved in with Voss's parents in Olive Branch.

¶4.    By order entered on November 4, 2015,[1] the chancery court granted Voss and Doughty joint legal custody of Aqua, granted Voss physical custody, and granted Doughty visitation the first and third weekend of each month and certain holidays. The court also ordered Doughty to pay child support of $150 per month. The court ordered the parties not to smoke in Aqua's presence and to follow any of Aqua's doctors' recommendations.

¶5.    Voss was twenty-three years old at the time of trial. She works shifts at FedEx from 10 p.m. to 3:30 a.m. during the week and from 10 a.m. to 2 p.m. on Sundays. Her father is a pilot at FedEx, and her mother, Diana Christopher, cares for Aqua while Voss is at work,

---

[1] The order shows that it was signed about six weeks earlier on September 23, 2015.

although of course Aqua generally is asleep while Voss is working night shifts. Voss catches up on sleep during the day, and Christopher helps with childcare during the day too. Aqua attends preschool two days each week from 9 a.m. to 2 p.m., and Voss picks her up from school and cares for her until her bedtime at 8 p.m.

¶6.     English is Voss's second language, as she was adopted from China when she was eight years old. In addition, Voss has been diagnosed with Central Auditory Processing Deficit (CAPD), a disorder that affects her ability to listen, process, and respond to spoken words. Voss is able to understand and communicate with others, but it takes her longer to respond to others because of her disorder.

¶7.     As noted above, Doughty lives in a duplex with his wife, his mother-in-law, and a friend. He is unemployed. He was fired from his last job at WalMart in the fall of 2015. He then enrolled in cosmetology school, but he withdrew. He testified that he had to withdraw for medical reasons. He has applied for disability benefits, but he has been denied twice. He claims that he has an undiagnosed medical condition that causes leg and back pain and difficulty walking or standing. Doughty testified that, because of his condition, he primarily sits on the floor or couch with Aqua when he keeps her. However, he testified that he is able to do everything necessary to care for Aqua, except give her baths or prepare food or drinks for her. Doughty testified that "if [Aqua] wants something to drink, . . . she'll just bring [her cup] to [Brady] because she knows [Brady] will go make it." Ashley gives Aqua baths when she is visiting Doughty. Because Doughty is unemployed, he is behind on his child support payments. However, his mother-in-law has made a few payments for him. At the time of

3

trial, Ashley had a new job, and she testified that she would be able to catch up on Doughty's child support arrearage for him.

¶8. On December 10, 2015, Voss filed a petition to modify visitation, to increase child support, and to hold Doughty in contempt for violating the November 2015 order. Voss alleged that Aqua's visitation schedule did not work because Aqua was "heavily exposed" to secondhand and thirdhand smoke, which was making her sick. Voss also claimed that an increase in child support was warranted because Aqua no longer qualified for Medicaid benefits and it would be financially burdensome for Voss to pay for health insurance by herself. Voss asked that Doughty be held in contempt for not following a pediatrician's recommendation and for exposing Aqua to cigarette smoke. Doughty answered and filed a counterclaim for modification of custody or visitation and for contempt. He alleged that Voss had failed to keep him informed of Aqua's doctors' appointments.

¶9. The chancellor assigned to hear the petition and counterclaim was not the same chancellor who entered the prior custody order. The case was tried on August 30, 2016. At the conclusion of the trial, the chancellor denied Voss's petition to modify visitation and increase child support and declined to hold Doughty in contempt. However, the chancellor granted Doughty's petition to modify custody and awarded him joint physical custody with Voss, with physical custody to alternate on a weekly basis. The chancellor also terminated Doughty's child support obligation and made each parent responsible for the cost of Aqua's care during their respective periods of custody. In her bench ruling, the chancellor said that the changed circumstances justifying a change in custody were (1) that Voss was working

4

nights and sleeping during the day, leaving Christopher to care for Aqua, and (2) Voss's language and communication issues ("her flat affect that I observed here today").

¶10. Voss filed a timely notice of appeal. She argues that the chancellor erred by modifying custody because there was no change in circumstances and because the chancellor did not perform an *Albright* analysis.[2] Voss also argues that the chancellor erred by denying her petition to modify visitation and by not finding Doughty in contempt.

## ANALYSIS

¶11. Doughty failed to file a brief despite a show-cause notice pursuant to Rule 2 of the Mississippi Rules of Appellate Procedure. "Automatic reversal is not required where the appellee fails to file a brief, but reversal is appropriate if the appellant's argument creates doubt in the judiciousness of the trial court's judgment." *Vassar v. Vassar*, 228 So. 3d 367, 374 (¶22) (Miss. Ct. App. 2017) (quotation marks omitted). However, when, as in this case, "child custody is at issue, the Court is compelled to review the record, despite [Doughty's] failure to file a brief." *Muhammad v. Muhammad*, 622 So. 2d 1239, 1243 (Miss. 1993).

¶12. "This Court employs a limited standard of review on appeals from chancery court." *Campbell v. Watts*, 192 So. 3d 317, 318 (¶5) (Miss. Ct. App. 2015). "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." *Sanderson v. Sanderson*, 824 So. 2d 623, 625 (¶8) (Miss. 2002). "Legal questions, however, are reviewed de novo." *Sanford v. Sanford*, 124 So. 3d 647, 652-53 (¶21) (Miss. 2013).

### I. Custody

---

[2] *See Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶13. "A modification of custody is warranted when the moving parent successfully shows (1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Campbell*, 192 So. 3d at 318 (¶6) (quotation marks omitted). The burden is on the parent requesting a change of custody to prove a material, adverse change in circumstances by a preponderance of the evidence. *Staggs v. Staggs*, 919 So. 2d 112, 115 (¶11) (Miss. Ct. App. 2005). If that burden is met, the chancellor must "apply the *Albright* factors to determine whether modification is in the child's best interest." *Campbell*, 192 So. 3d at 319 (¶6) (quoting *White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010)). However, if there has been no material, adverse change in circumstances, the *Albright* factors need not be addressed. *See id.*

¶14. Doughty's request to modify custody did not allege any specific change in circumstances. After trial, the chancellor found that Voss's schedule—working at night and sleeping during the day—was a change in circumstances. The chancellor also found that Voss's "communication problems" were a change in circumstances because Aqua was at an age at which she should be learning how to talk.

¶15. Although Voss worked nights and relied in part on her mother's help, Doughty failed to show that this was a change in circumstances since the prior custody order. Moreover, there was no evidence that this purported change adversely affected Aqua, who was, by all accounts, a normal, happy child. Nor was there any evidence of any material change in circumstances related to Voss's CAPD. Doughty testified that Aqua sometimes asked for

6

things by using gestures—for example, when she wanted Brady to get her something to drink. The chancellor seemingly took that to mean that Aqua, who was less than two years old at the time of trial, had developmental issues that required a change in custody. However, there was simply no credible evidence to support such a finding.

¶16.    We reverse and render the chancellor's modification of custody. Doughty did not prove by a preponderance of the evidence that there had been a material change in circumstances that adversely affected Aqua's well being. The chancellor's support for finding a material change in circumstances—that Voss relied on her mother for child care and had communication issues—were not shown to be new circumstances. Nor was there any evidence that these issues had an adverse effect on Aqua.[3]

¶17.    When the chancellor modified custody, she also modified child support. The prior custody order required Doughty to pay child support of $150 per month. The chancellor terminated Doughty's child support obligation and ruled that each party would be solely responsible for Aqua's support during their respective periods of custody. Because we reverse and render the chancellor's modification of custody, we also reverse and render the modification of child support. Therefore, the child support provision of the November 2015 order shall apply prospectively.

## II.    Visitation

¶18.    Voss also argues that the chancellor erred by denying her petition to modify and limit Doughty's visitation. The chancellor denied Voss's petition after finding that there had been

---

[3] In addition, the chancellor did not perform any sort of *Albright* analysis. This is also grounds for reversal. *See Campbell*, 192 So. 3d at 319 (¶7).

no "change in circumstances" since the original visitation order. The chancellor's ruling arguably misapplied the law concerning modification of visitation. "All that need be shown [to obtain a modification of visitation] is that there is a prior decree providing for reasonable visitation rights which isn't working and that [modification] is in the best interests of the children." *Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986). On this issue, "our familiar change in circumstances rule has no application." *Id.* (citation omitted).

¶19. Nonetheless, we affirm on this issue because no evidence was presented that the visitation schedule was not working or was not in Aqua's best interest. Voss petitioned the court to modify custody only thirty-six days after the original visitation order was entered. A "visitation plan should be given an opportunity to work." *Jones v. McQuage*, 932 So. 2d 846, 849 (¶14) (Miss. Ct. App. 2006) (holding that there was no evidence that a visitation schedule was not working four months after its entry). Voss did not give the original visitation plan in this case an opportunity to work.

¶20. Moreover, Voss failed to prove that the original visitation plan was not working. She alleged that it was not working only because Aqua was being exposed to smoke while she was with Doughty. A representative from a drug testing company testified that a January 6, 2016 hair follicle test showed that Aqua had absorbed and metabolized nicotine from secondhand or thirdhand cigarette smoke. However, the witness testified that the test detected nicotine absorption dating back six months, so it could have reflected exposures prior to the chancery court's prior custody order. The witness also testified that the test did not identify when or where the exposure occurred or "whether it was once, twice, or three

8

times"—only that it occurred sometime in the prior six months.

¶21. A pediatric pulmonologist, called by Voss as an expert witness, testified that "any nicotine level in your body is significant." He opined that Aqua's "chronic runny nose," coughing, congestion, and other "upper respiratory" issues "could be attributable to . . . exposure to [cigarette] smoke." However, he acknowledged that "a lot of things" can cause such issues, that none of Aqua's treating physicians have attributed these issues to exposure to cigarette smoke, and that Aqua does not have asthma. The witness had never seen or examined Aqua, and his opinions were based solely on a review of her medical records.

¶22. Doughty and Ashley admitted that they smoke, but both denied that they smoke in their house or in Aqua's presence. They admitted that Ashley's mother, who pays most of their bills and has paid some child support for Doughty, does smoke in her bedroom with the door closed. They denied that they allowed anyone to smoke in Aqua's presence.

¶23. Obviously, parents should not expose their children to cigarette smoke. However, the evidence indicated that Doughty tried to protect Aqua from exposure, and there was no clear link between exposure and Aqua's congestion, runny noses, and coughing. Especially given the short time between entry of the prior custody order and Voss's petition to modify visitation, there was insufficient evidence that the visitation schedule was not working. We therefore affirm the chancellor's denial of Voss's petition to modify visitation.

### III. Contempt

¶24. Voss also argues that the chancellor should have cited Doughty for contempt because he violated the prior order's provision that "neither party shall smoke cigarettes in [Aqua's]

9

presence." Voss also argues that Doughty permitted Aqua to be exposed to secondhand smoke, in contravention of her doctor's recommendations. However, as noted above, the evidence did not clearly establish when or where Aqua was exposed to smoke. Indeed, there was testimony that the test results admitted into evidence may have reflected exposures that predated the prior custody order. In addition, Doughty and Ashley testified that they tried to protect Aqua from exposure to smoke.

¶25. "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis. A chancellor has substantial discretion in deciding contempt matters because of the chancellor's 'temporal and visual proximity' to the litigants." *Gilliland v. Gilliland*, 984 So. 2d 364, 369-70 (¶19) (Miss. Ct. App. 2008). On this evidence, we cannot say that the chancellor manifestly erred or abused her discretion by not finding Doughty in contempt.

## CONCLUSION

¶26. We reverse and render the modification of custody because Doughty failed to prove any material change in circumstances since the entry of prior custody order. Therefore, we also reverse and render the chancellor's sua sponte modification of child support. We affirm the denial of Voss's petition to modify visitation and to hold Doughty in contempt.

¶27. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**