# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01230-COA

**BRADLEY W. SMITH**                                                                 **APPELLANT**

**v.**

**LAURIE H. SMITH**                                                                    **APPELLEE**

DATE OF JUDGMENT:                07/11/2019
TRIAL JUDGE:                     HON. J. DEWAYNE THOMAS
COURT FROM WHICH APPEALED:       HINDS COUNTY CHANCERY COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          W. THOMAS McCRANEY III
ATTORNEY FOR APPELLEE:           RICHARD C. ROBERTS III
NATURE OF THE CASE:              CIVIL - CUSTODY
DISPOSITION:                     AFFIRMED - 01/19/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     After a fourteen-year marriage, the Hinds County Chancery Court granted Bradley

(Brad) and Laurie Smith a divorce on the ground of irreconcilable differences on February

21, 2014. The couple had two minor children born of the marriage: a son, "George," and a

daughter, "Irene."[1] The final judgment of divorce incorporated the parties' Marital

Dissolution Agreement (MDA). Under the MDA's terms, Laurie had sole physical custody

of both children, and the parties shared joint legal custody. Due to the close proximity of the

parties' residences in Jackson, Mississippi, Brad enjoyed liberal visitation with the children.

---

[1] Pseudonyms are used to protect the minors' identities. When the parties divorced,
George was eleven years old, and Irene was seven years old.

¶2. In 2016, Laurie and Irene moved to Memphis, Tennessee, for Irene to receive specialized education and instruction for her learning and developmental deficits. The following school year, George was enrolled at a boarding school in Chattanooga, Tennessee. As a result, the parties filed competing petitions for modification of custody and child support, as well as citations of contempt. In 2018, Laurie wanted to transfer Irene to a school located in Nashville; Brad opposed the transfer and relocation for various reasons. Brad also requested sole physical custody of George.

¶3. After a trial on the matters, the chancery court entered its opinion and order, awarding Laurie sole physical and legal custody of Irene and awarding Brad sole physical and legal custody of George. The court further ordered Brad to pay one-half of the tuition for Irene's new school and to enroll George at a private school in Jackson. Aggrieved, Brad appeals from the court's judgment. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶4. Brad and Laurie were divorced in 2014. The chancery court's divorce judgment incorporated an MDA entered between the parties, which granted Laurie sole physical custody of the two minor children. However, Brad enjoyed extensive visitation with the children under the MDA's terms.[2] Brad was also ordered to pay monthly child support of $1,000 per child, as well as one-half of the children's private-school tuition and expenses, health insurance, and out-of-pocket medical costs. Brad additionally agreed to pay any and

---

[2] Brad received visitation every first, third, and fifth weekend from Thursday through Monday, approximately two hours on Tuesday evenings, alternating holidays, and two weeks during the summer.

2

all reasonable expenses associated with the children's extracurricular or sports activities until graduation or emancipation. The parties agreed to split the costs associated with the children's college education equally.

¶5.    In 2016, Irene was diagnosed with dyslexia; she also has "Expressive/Receptive Language Disorder" and auditory deficits. Brad and Laurie agreed that it would be in Irene's best interest to relocate her to the Bodine School (Bodine) in Germantown, Tennessee, which specializes in dyslexia elementary education and instruction. Laurie and Irene moved to Memphis in December 2016. George remained in Jackson under Brad's care and custody. However, in 2017, the parties enrolled George at McCallie Preparatory School (McCallie) in Chattanooga. Because of the increased educational costs, Laurie's father, Richard Hickson, agreed to pay George's tuition and board in the amount of approximately $50,000 per year. Brad contributed tuition in the amount of one-half of George's former tuition at Jackson Academy and one-half of George's tutoring costs.

¶6.    In the meantime, Brad had filed a petition for modification and for a citation of contempt on April 26, 2016, alleging (1) that it would be in the children's best interest for the visitation schedule "to be modified and clarified" and (2) that Laurie was in contempt for hindering Brad's visitation with the minor children "by scheduling activities and trips with the children which conflict with and prevent Brad from exercising his visitation." Laurie filed a counter-petition for modification and a citation for contempt on July 11, 2016. In her petition, she asserted that Brad was in contempt for failing to reimburse Laurie for the children's medical and tutoring expenses and "for his continued harassment and threatening

3

of Laurie." The petition also requested modification of the "summer and holiday visitation provisions" and the provision for the payment of the children's extracurricular activities in the divorce judgment. Laurie argued that Brad was "unreasonably withholding" his consent for the children to participate in extracurricular activities because he was solely responsible for the costs associated with the activities.

¶7. The matter was set for a trial to be held in November 2016, but the parties agreed to remove the trial setting from the docket in an attempt to negotiate a settlement of the issues raised in their petitions. On February 3, 2017, Laurie filed an amended petition for modification of the judgment of divorce and the MDA, requesting that the chancery court set a hearing should the parties be "unable to agree upon a mutually acceptable Agreed Order for the modification of the custody, visitation and support provisions of the MDA." Brad filed a counter-petition for modification, asking the court to change the custody provisions "such that Brad has physical custody of [George] and Laurie has physical custody of [Irene]" and to modify the "financial obligations and visitation schedule."

¶8. On March 7, 2018, Brad filed an amended petition for the modification of the judgment and the MDA and for contempt, again requesting sole physical custody of George. The petition also noted that Laurie had agreed to suspend child-support payments for George, as he had been living with Brad and his wife in Jackson, along with their two children born of that marriage. Noting that he was now financially supporting four children, Brad argued that "[t]he totality of these material changes in circumstance, coupled with the relative financial positions of the two parties, constitutes a reasonable and justifiable basis to reduce,

if not cancel, Brad's total support obligation for [Irene]."

¶9. In response to an emergency motion filed by Laurie, the chancery court held a hearing and entered a temporary order on April 12, 2018, which allowed Laurie to enroll Irene in the Currey Ingram Academy (Currey Ingram) in Nashville, a K-12 preparatory school specializing in students with learning differences.[3] Subsequently, after another hearing on June 7, 2018, the chancery court ordered that George remain enrolled at McCallie for the 2018-2019 school year in accordance with George's wishes.

¶10. Laurie filed a second amended petition for modification on July 6, 2018, requesting sole legal custody of both children and modification of Brad's visitation schedule in light of her and Irene's relocation to Nashville, as well as a review of Brad's child-support obligations. The petition also alleged that Brad was in contempt of the divorce judgment for refusing to pay child support for George since January 2017. A week later, Brad filed a motion seeking to enjoin Laurie from relocating Irene to Nashville or, in the alternative, that he be awarded temporary emergency custody of Irene pending the scheduled August 28 hearing so that Irene could "continue her education without undue hardship and disruption."

¶11. The chancery court denied Brad's motion and ordered that sole physical custody of Irene remain with Laurie. The court also ordered that the parties enroll Irene at *both* Bodine

---

[3] The reason cited for Laurie's exploring other educational opportunities was because Irene's school in Memphis, Bodine, only provides education through the sixth grade, and that last year (6th grade) prepares the student "to access a more mainstream environment," which Bodine's director testified Irene was not ready to do.

and Currey Ingram[4] and that Irene was to begin attending Currey Ingram beginning in August 2018. Lastly, the order held that "[a]ll costs of attendance shall continue to be paid in the manner previously agreed by the parties." On August 8, 2018, Laurie filed a petition for contempt, asserting that Brad was in contempt of the court's temporary order for refusing to pay one-half of the tuition for Currey Ingram.

¶12. On August 10, 2018, Brad filed a second amended petition for modification and contempt, noting that he had "suffered an involuntary 100 share reduction in his equity position at [his law firm,] which has resulted in a decrease in his income." Brad also requested that the court modify the MDA by (1) transferring physical custody of both children to Brad, (2) ordering Laurie to pay $1,000 in monthly child support for George during the summer months when George resides with Brad and his family, and (3) hold Laurie in contempt for violating certain provisions of the MDA.

¶13. On August 28-29, 2018, the chancery court held a full trial on the issues presented in the parties' competing petitions. The court entered a temporary order on August 30, 2018, directing that Irene remain under Laurie's sole physical custody and that the parties share Irene's expenses at Currey Ingram.

¶14. On March 26, 2019, the chancery court entered its opinion and order (March Order), addressing the parties' various petitions for modification and contempt. Although the court found "Laurie's relocation [was] not a material change in circumstances adversely affecting

---

[4] Because Brad and Laurie had joint legal custody, both were required to fill out the schools' application forms in order for Irene not to lose her place at either school pending the outcome of the trial, which was scheduled for August 28.

the minor children," the court did determine that a material change in circumstances adversely affecting George had occurred—namely, George's unhappiness at McCallie and his expressed desire to return to Jackson and finish his high-school education at St. Andrew's Episcopal School.[5] The court also noted that the parties' "increasing deterioration of communication" had made "joint legal custody of the two minor children impossible." Therefore, addressing the factors outlined in *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), the chancery court concluded that it would be in George's best interest to return to Jackson, granted Brad sole physical and legal custody of George as of the completion of the 2018-2019 school year, and directed Brad to enroll George in St. Andrew's for the upcoming 2019-2020 school year. The court awarded Laurie sole physical and legal custody of Irene.

¶15. Based on the MDA's provision that the parties would share equally the costs of the children's private-school tuition, the chancery court further ordered Brad to pay $21,000, one-half of the Currey Ingram yearly tuition. With regard to the children's extracurricular expenses, the court limited Brad's responsibility to pay "$6,000 per year per child." The chancery court also terminated Brad's responsibility to pay $1,000 per month in child support for George; the monthly child support for Irene remained in effect.

¶16. With regard to the citations for contempt, the court found "that neither party ha[d] faithfully executed the provisions of the MDA." However, the court declined to find either party in willful and contumacious contempt. The chancery court did conclude that Brad was

---

[5] George had previously attended St. Andrew's from pre-school through sixth grade.

responsible for Irene's extracurricular expenses incurred prior to modification and ordered him to pay those expenses within thirty days. The court also determined that Brad was in arrears for George's child support in the amount of $11,000, plus interest.

¶17. Brad filed a motion for reconsideration of the judgment on April 5, 2019, challenging the court's rulings on custody, visitation, and child support. The chancery court denied the motion in its "Final Order of the Court" (July Order) dated July 11, 2019. The court did, however, decrease the award of back child support to $10,250, finding its prior calculation in error. Brad appeals from the chancery court's judgment, alleging several assignments of error.

## STANDARD OF REVIEW

¶18. Our standard of review for a chancery court's ruling on a motion for modification of custody "based on a material change in circumstances" is limited. *Page v. Graves*, 283 So. 3d 269, 274 (¶18) (Miss. Ct. App. 2019) (citing *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016)). We will not disturb a court's findings "when supported by substantial evidence unless the [chancery court] abused [its] discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied." *In re C.T.*, 228 So. 3d 311, 315 (¶6) (Miss. Ct. App. 2017) (quoting *Bowen v Bowen*, 107 So. 3d 166, 169 (¶6) (Miss. Ct. App. 2012)). The chancery court's "interpretation and application of the law" is reviewed de novo. *Id.* (quoting *Seale v. Seale*, 150 So. 3d 987, 989 (¶5) (Miss. Ct. App. 2014)).

## DISCUSSION

I.     **Whether the chancery court erred by failing to consider if Laurie's school choice for Irene was reasonable, necessary, and in the child's**

**best interest.**

¶19.    In the MDA, the parties "agree[d] to share equally in the costs and expenses associated with the minor children's enrollment and attendance at their current private schools, and/or such other schools which they may later attend."  Finding "the MDA should be enforced as written," the chancery court held in its March Order that "Brad and Laurie shall pay equally all private school tuition and expenses for the minor children at Currey Ingram and St. Andrew[']s as 'other schools which they may later attend.'"

¶20.    Brad claims that the court erred by failing "to undertake any review of the reasonableness and necessity for the decision" to transfer Irene to the school in Nashville. Brad also asserts that Laurie's decision to move Irene to Currey Ingram "severely impacted [his] ability to spend time with [Irene], limited her time with her siblings, and imposed a significantly higher financial burden on [him]."  Thus, he contends the issue should be remanded for a finding by the court as to whether the choice to change schools was "reasonable, necessary, and affordable by both parents."

¶21.    The Mississippi Supreme Court indeed has held that "even where parents agree to send children to private school, support awards made in consideration of this expense must also be reasonable in light of both parents' financial means." *Southerland v. Southerland*, 816 So. 2d 1004, 1006 (¶11) (Miss. 2002) (citing *Cupit v. Cupit*, 559 So. 2d 1035, 1038 (Miss. 1990)).  Nevertheless, in this instance, we find no abuse of discretion in the court's ruling.  In the March Order, the court "carefully considered all evidence and testimony regarding Brad's income, Laurie's income, the needs of the children and support obligations"

9

and concluded that Brad "failed to show a substantial and material change in circumstances that would warrant a downward modification of support." Moreover, as the court recognized in the July Order, the MDA provision "did not specify any particular private school and did not impose any limitation upon the costs of attendance." In *Seeley v. Stafford*, 840 So. 2d 111, 112-13 (¶8) (Miss. Ct. App. 2003), this Court considered a husband's claim that the court had erred by not following the applicable statutory guidelines in awarding child support. Because the husband had "voluntarily agreed to pay" a specific monthly sum for child support in the divorce decree approved by the chancery court, we concluded that the "initial decree must be enforced subject to subsequent modification." *Id*. at 113 (¶10).

> Absent fraud or overreaching, the parties in an irreconcilable differences divorce should be "allowed broad latitude" in arranging their property and financial matters. When the parties have reached an agreement and the chancery court has approved it, [our appellate courts] will enforce it and take a dim view of efforts to modify it, just as when parties seek relief from their contractual obligations.

*Id*. (citation omitted); *see also Riddick v. Riddick*, 906 So. 2d 813, 821 (¶26) (Miss. Ct. App. 2004) (upholding MDA provision allowing husband "to pay reduced child support while the child(ren) are in college").

¶22. We further find no merit to Brad's claim that "Laurie did not present any evidence that Currey Ingram offered any educational advantage over the specialized instruction [Irene] was receiving at Bodine." The chancery court held hearings on this matter and heard testimony from both parties, as well as depositions by staff members at Bodine with regard to Irene's educational needs. While it was demonstrated that Irene was adjusting well at Bodine, there was no dispute that Irene's current school, Bodine, would not allow her to progress past the

10

sixth grade; she had currently finished fourth grade. Laurie also presented evidence that Irene's specific learning needs for her language and auditory deficits could not be addressed at Bodine. Dr. Lyle Davis, the Director of Curriculum for Bodine, testified at a deposition that Irene was making good progress at Bodine and that the school could address her dyslexia. However, Dr. Davis admitted that "Irene specifically does require more than what we do provide, and that is met – those needs are met through, again, outside contractors, speech and language pathologists, as well as additional tutoring."[6] It was also Dr. Davis's opinion "that a mainstream educational environment . . . would probably not meet [Irene's] needs at this time." We would also note that Brad's central argument concerns the cost of attendance at Currey Ingram; he offers nothing to rebut the testimony that Currey Ingram's curriculum would be beneficial to Irene's learning difficulties.

¶23. Therefore, we find no error in the court's determination that Irene should be enrolled at Currey Ingram and that Brad should be responsible for one-half of the cost for tuition and expenses.

II. **Whether the Court of Appeals should overrule the "Mississippi Minority Rule" that the relocation of a custodial parent is not a material change in circumstances for the purposes of modification of custody.**

¶24. The chancery court ruled that Laurie's move to Nashville did not constitute a material change in circumstances, although custody was modified on other grounds. Brad acknowledges that the court's ruling is consistent with Mississippi law, but he argues that

---

[6] In contrast, there was evidence presented that Currey Ingram had in-house speech-language services and strategies.

11

"[i]n most states, a custodial parent's move triggers some level of judicial review to determine whether the custodial arrangement should be modified." For these reasons, Brad requests that this Court "consider changing the Mississippi rule to comport with national practice on this issue" and "remand to the court for a determination of the impact of the move on his and Irene's relationship and whether it should alter the custody arrangement."

¶25. In *Giannaris v. Giannaris*, 960 So. 2d 462, 468 (¶11) (Miss. 2007), the Mississippi Supreme Court held "that the mere moving of the custodial parent does not constitute a material change in circumstances for child custody modification purposes." "Nor is the distance moved 'dispositive as to whether a material change in circumstances has occurred; it is the effect the move has on the child and the custody arrangement that is dispositive.'" *Welton v. Westmoreland*, 180 So. 3d 738, 749 (¶34) (Miss. Ct. App. 2015) (quoting *Pearson v. Pearson*, 11 So. 3d 178, 182 (¶10) (Miss. Ct. App. 2009)). As this Court "lacks authority to overrule Mississippi Supreme Court precedent," *Hudson v. WLOX Inc.*, 108 So. 3d 429, 432 (¶10) (Miss. Ct. App. 2012), we decline Brad's request to find that a custodial parent's relocation, on its own, constitutes a material change in circumstances.

### III. Whether the chancery court erred in modifying custody.

¶26. Brad complains that the chancery court's "[s]tripping [him] of joint legal custody of [Irene], while also finding that he is a fit and loving parent, is contrary to Mississippi case law and should be reversed." This Court has held that "[a] modification of custody is warranted when the moving parent successfully shows (1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2)

12

that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Voss v. Doughty*, 242 So. 3d 952, 956 (¶13) (Miss. Ct. App. 2018) (quoting *Campbell v. Watts*, 192 So. 3d 317, 318 (¶6) (Miss. Ct. App. 2015)). Here, the chancery court agreed that a material change in circumstances had occurred that adversely affected the children, and the court appropriately considered the *Albright* factors in making its determination. Although the court acknowledged that Brad and Laurie had "admirable parenting skills . . . and str[o]ve to provide loving, stable home environments," the chancery court nevertheless concluded that the parties' inability "to cooperate in routine decisions regarding the children" and to agree on "even the most basic parenting decisions" warranted a finding of a material change in circumstances. As noted in the court's July Order, the parties had filed numerous emergency motions with regard to the children's schooling, putting the children "in the untenable position of being uncertain where they would attend school and whether they would be permitted to continue in certain extracurricular activities."

¶27. "In appeals from child-custody decisions, our polestar consideration, like the chancellor's, must be the best interest of the child." *Hall v. Hall*, 134 So. 3d 822, 825 (¶8) (Miss. Ct. App. 2014) (citing *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009)). The evidence demonstrated that Laurie uprooted her life to take Irene first to Memphis and then to Nashville for no other reason than to provide Irene with the best possible educational experience given the child's learning and developmental deficits. Laurie also hoped to be closer to George, who was attending McCallie at the time. We find substantial evidence to support the court's ruling that a modification of custody would be in

13

the children's best interests.

## IV. Whether the chancery court erred in ordering Brad to enroll George in a specific private school.

¶28. Arguing the chancery court erred in ordering George be enrolled at St. Andrew's for the 2019-2020 school year, Brad claims that "[t]he law is clear that a chancellor cannot impose such a restriction on the discretion of the custodial parent to make child[-]rearing decisions." Laurie responds that Brad has waived this claim because he consented to the court's decision at a February 28, 2019, status conference that was held to address George's stated desire to return to Jackson. Brad refutes this waiver argument by noting that the court's interim order dated March 4, 2019, said "nothing about conditioning [George's] return to Jackson to live with Brad on his future enrollment at St. Andrew[']s."

¶29. At the February 2019 status conference, Laurie's attorney noted that "[t]here may be some dispute as to where [George] would be placed in school," as he had previously attended both St. Andrew's and Jackson Academy. The chancellor remarked he had directly conversed with George, and the child had indicated his desire to return to St. Andrew's for his junior and senior years of high school. The court also noted that George had expressed this preference to his parents. Although Brad is correct that the chancery court made no ruling at that time regarding George's enrollment, Brad made no objections during the discussion regarding George's preference to return to St Andrew's. Moreover, Brad did not raise this assignment of error in his motion to reconsider the judgment. "It is well-established that a party is not allowed to raise an issue for the first time on appeal, because to do so prevents the lower court from addressing the alleged error." *Ory v. Ory*,

14

936 So. 2d 405, 409 (¶9) (Miss. Ct. App. 2006). Therefore, we decline to address the validity of the court's ruling on this issue because Brad "failed to raise this issue either by objection or via a post-trial motion." *See id.* at 409-10 (¶9).

**V.      Whether the chancery court erred by not ordering Laurie to pay child support for George.**

¶30.    Addressing whether child support warranted modification in its March Order, the chancery court expressly considered Brad's argument that Laurie received "substantial gifts from her father" in order "to pay her obligations for the children," as well as her monthly income. The court found that the financial support provided by Laurie's parents was "simply not a substantial and material change in circumstances[.]" The court reasoned, "Given the reasonable needs of the children at the time of the divorce and the amount of support provided by Brad, the parties clearly anticipated that Laurie would receive assistance from her family in supporting herself and the children."

¶31.    Noting that Laurie "has significant earning capacity but has chosen not to work," Brad contends the chancery court should have ordered that Laurie, as the noncustodial parent, should pay child support for George. Because Laurie's parents were contributing to the children's school tuition, he also claims that "it would be appropriate for the court to apply the statutory guidelines to her imputed income to calculate basic support" or, at a minimum, order her to pay $1,000 per month. To support his claim, Brad cites *Houston v. Houston*, 121 So. 3d 283, 297 (¶¶48-50) (Miss. Ct. App. 2013), where this Court affirmed a chancery court's decision to compute a wife's income partially based upon regular gifts from parents. *See also Huseth v. Huseth*, 135 So. 3d 846, 854 (¶21) (Miss. 2014) (acknowledging chancery

court's finding that payment of a party's living expenses by his parents could be imputed to his income in determining separate maintenance and child support).

¶32. First, as the chancery court correctly determined in its July Order, "Brad is incorrect in his assertion that Laurie does not pay any child support for [George]; Laurie's support is simply paid directly to the children's schools." *See Collado v. Collado*, 282 So. 3d 1239, 1242 (¶10) (Miss. Ct. App. 2019) ("[P]rivate-school tuition is considered part of child support." (quoting *Bruton v. Bruton*, 271 So. 3d 528, 534 (¶16) (Miss. Ct. App. 2018))).

¶33. Second, we find no error in the court's decision not to order Laurie to pay additional child support. In the July Order, the chancery court distinguished the two cases cited by Brad from the current case based on the different factual scenarios presented. In *Houston*, 121 So. 3d at 292 (¶28), the wife had received a monthly allowance from her parents throughout her marriage and separation. In *Huseth*, the husband's parents contributed regular financial support by paying his living expenses as a benefit of being employed by his parents' business. *Huseth*, 135 So. 3d at 853-54 (¶¶20-21). Furthermore, neither of these cases concern a modification of child support, which requires a material change in circumstances.

¶34. Here, although it was acknowledged that Laurie's father has assisted her financially since the divorce, the court declined to impute this as income, recognizing that "[t]hese gifts may cease at any moment[, and] Laurie has no claim to future gifts by virtue of law or contract." *See Robinson v. Robinson*, 554 So. 2d 300, 305 (Miss. 1989) (declining "to consider mere gratuities given to the complainant by her father" in computing her income for

16

the purposes of an award for separate maintenance).[7] The chancery court, therefore, concluded, "Laurie's father owes no legal obligation to support [George, Irene], or Laurie. This [c]ourt will not find otherwise. Based upon Laurie's lack of income at the time of trial, this [c]ourt finds that no award of direct child support for [George] from Laurie is appropriate **at this time.**" Finding the court's ruling supported by substantial evidence, we affirm on this issue.

## VI. Whether the chancery court erred in ordering Brad to pay back child support for George.

¶35. After Laurie and Irene moved to Memphis in 2016, the parties agreed that George would remain in Jackson with Brad. In the March Order, the chancery court determined that Brad was in arrears for $20,000 in direct child support. However, because George had been under Brad's care and custody starting in December 2016, the chancery court credited Brad for $1,000 per month from December 2016 to August 2017 and for the months that George spent in Jackson during his school breaks from McCallie. However, the court did order Brad to pay back child support for those months that George attended boarding school. In the July Order, the court noted that it had "improperly credited Brad for nine (9) months while the total should have been eight (8) months" and amended the amount of back child support to $10,250.

---

[7] Laurie explained that her father retained brokerage accounts for the children from a revocable trust and that she had no access to those accounts. Laurie further noted that she only had occasional income from a design television show and royalties. At the time of trial, she had no regular full-time employment; the same as when the parties divorced. Also, Brad has offered no evidence as what income Laurie should be earning while also being a custodial parent to a child with learning and developmental deficits.

¶36. Brad contends that he should not have been ordered to pay back child support for George, because Brad had maintained "a primary home for [George] during that time and was paying his expenses." However, the cases cited by Brad to support his claim all involved situations where the child had moved full-time into the noncustodial parent's home.[8] Here, George was attending boarding school during those specific months in which the court ordered that Brad pay direct support. The chancery court addressed this argument in its July Order, finding that Brad should not be relieved of his support obligations, as he had "presented no evidence at trial of additional support paid directly to [George] or for the benefit of [George] during his time at McCallie, save certain tuition payments." The instances of other child support by Brad involved the payment of expenses already contemplated by the MDA—school tuition and expenses, as well as extracurricular activities. The only other expense cited by Brad is the maintenance of a "primary home for [George.]" But as the court noted, Laurie also "continued to maintain a home for [George] to visit during weekends and school breaks," and she "remained the primary physical custodian for [George] and remained responsible for all of his needs and expenses."[9] The supreme court has held that a noncustodial parent may not cease paying child support simply because the

[8] *See Mosley v. Mosley*, 784 So. 2d 901, 905 (¶¶11-13) (Miss. 2001) (holding custodial mother should have been required to refund child support during period that child lived with noncustodial parent); *Alexander v. Alexander*, 494 So. 2d 365, 368 (Miss. 1986) (reversing award of back child support to mother for the twenty-month period in which child lived with father); *Nelson v. Nelson*, 271 So. 3d 613, 617-18 (¶¶10-15) (Miss. Ct. App. 2018) (upholding court's award of retroactive child support and credit for overpayment of support to the father during one-year period that child lived with father).

[9] Furthermore, Laurie's father had contributed a significant sum ($50,000) toward George's room and board at McCallie.

child is away at boarding school and not living with the custodial parent. *R.K. v. J.K.*, 946 So. 2d 764, 779 (¶¶47-49) (Miss. 2007). Therefore, we find no abuse of discretion in the court's ordering Brad to pay the eight months of back child support while George attended McCallie and was still under Laurie's physical custody under the MDA.

**VII. Whether the chancery court erred in revising the MDA provision regarding the payment of the children's extracurricular activities.**

¶37. Under the MDA's terms, Brad agreed to pay 100% of the children's extracurricular activities. A handwritten provision to the MDA further indicated that the activities "shall be mutually agreed upon by the parties in advance." After moving to Memphis, Irene began horseback riding lessons. Laurie testified that Brad refused to reimburse her for the lessons unless she agreed to pay one-half of the costs. She said he also refused to agree to permit Irene to play soccer or participate in dance. Brad admits on appeal that he became concerned with what he considered to be excessive costs associated with Irene's extracurricular activities such as horseback riding, "including a single monthly bill for $800."

¶38. The chancery court determined in the March Order that the MDA handwritten provision "stipulating that the activities be mutually agreed upon in advance was unworkable." Therefore, the court modified the MDA provision, eliminating the handwritten portion and limiting Brad's responsibility "to pay 100% of any and all reasonable costs and expenses associated with any sports or extracurricular activities of each child . . . to $6,000 per year per child." Brad takes issue with the court's ruling only to the extent that, under the original handwritten provision, he was only to pay for those activities "to those on which he agrees."

19

¶39. We find substantial evidence to support the chancellor's finding that the handwritten provision was "unworkable" based on the parties' inability to agree over the children's extracurricular activities. Laurie testified that after she and Irene moved to Memphis, Brad informed her he did not want to pay for the child's horseback riding or the continuation of her dance lessons because he could no longer afford it; he began to withhold the funds for those activities, prompting further litigation between the parties in order to enforce the provision. We find no manifest error in the court's revision of the MDA provision regarding the payment of the children's extracurricular activities.

## VIII. Whether the chancery court erred in awarding Brad limited visitation with Irene.

¶40. The chancery court granted Brad visitation with Irene, which included a four-day weekend in January and February, approximately five weeks in the summer, Labor Day weekend, fall break, Father's Day, and alternating spring breaks and holidays. The court's order also stated that Brad could visit Irene in Nashville once per month. Noting that the MDA had provided him "an extensive visitation arrangement that gave him substantial time with his children," Brad argues that the court's current visitation schedule now "puts a hardship on Brad's entire family and unduly complicates efforts to schedule vacations with the children over the summer." He particularly cites concern that Laurie has the ability to decide which weeks during the summer that she wishes to have with Irene.

¶41. We find no abuse of discretion in the court's establishment of Brad's visitation schedule with Irene. The chancery court is afforded "broad discretion when determining appropriate visitation and the limitations thereon." *Michael v. Smith*, 237 So. 3d 183, 189

(¶22) (Miss. Ct. App. 2018) (quoting *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994)). In deciding to alter a visitation schedule, the court "must consider 'the best interest of the child as his paramount concern,' and 'the rights of the noncustodial parent, recognizing the need to maintain a healthy, loving relationship between the noncustodial parent and his child.'" *Id*. (quoting *Harrington*, 648 So. 2d at 545). As explained in its July Order, the chancery court "spent numerous hours crafting a specific visitation schedule that gives Brad as much visitation as the distance allows, including a provision allowing Brad visitation at any time in Nashville."[10] We find this issue is without merit.

¶42. Finding no error in the chancery court's findings, we affirm the judgment.

¶43. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS AND McCARTY, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

---

[10] Laurie notes that Brad's brother resides in Nashville, and Brad's employer has an office there as well.