IRVING, J.,
for the Court.
¶ 1. The final judgment of divorce of Sandra and Alex Johnson was entered by the Chancery Court of Lee County on April 24, 2002, and the parties were awarded joint legal and physical custody of their four-year-old daughter, Laken Paige Johnson. In January 2003, Sandra filed a complaint for citation for contempt of court and modification of the final judgment of divorce. The chancellor found that the proof offered by both parties was insufficient to show a material and substantial change of circumstances. However, on September 24, 2003, the chancellor held that the best interests of Laken Paige' Johnson would be served by adjusting the visitation schedule by awarding primary physical visitation to Sandra.
¶ 2. Alex now appeals, asserting the following issues:(l) the chancellor erred in modifying physical custody of the minor child after finding that there had been no sufficient proof on the part of either party to show a substantial and material change in circumstance that adversely affects the child’s welfare, (2) that in the alternative, if the proof established sufficient changes in circumstances adverse to the best interests of the minor child which would justify a change of custody, the chancellor erred in awarding physical custody of the minor child to Sandra in that the chancellor’s decision was against the overwhelming weight .of the evidence, and an objective application of the Albright factors weighed heavily in favor of the Appellant.
Finding that the chancellor erred, we reverse and render.
FACTS
¶3. The judgment of divorce awarded Alex and Sandra joint legal and physical custody of then; minor child. It also provided that the child would reside in equal portions with both- parents, with specific dates to be mutually agreed upon by the parties. The judgment of divorce further provided that “[a]s a result of each party being solely responsible for the care, support and maintenance of the minor child when she is in his and her physical custody, neither party shall be required to pay child support to the other.”
¶ 4. Sandra testified that she was a LPN nurse at the Women’s Hospital in Tupelo, Mississippi and that she usually worked three nights on and two nights off, then three nights on and two nights off. .Sandra further testified that Alex had Laken on the nights that she worked and every other weekend and that this agreement worked from the end of April 2002, until August 19, 2002, when Sandra started working days. After Sandra started working days, Alex would get Laken whenever he wanted to, which was usually two or three nights a week. Sandra testified that she sought modification of the-judgment of divorce because she had started working days and wanted to spend more time with her daughter.
¶ 5. Following the filing of Sandra’s complaint for citation for contempt of court and modification of the final judgment of divorce, the chancellor entered a temporary order which provided that Laken’s *370 custody would be switched every seventy-two hours. The temporary custody arrangement did not work and caused'confusion for Laken. Thereafter, the chancellor entered a final order, the details of which are set forth during our discussion below.
DISCUSSION
¶ 6. “[F]indings of a chancellor will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard,'was manifestly wrong, or was clearly erroneous.” Hamilton v. Hopkins, 834 So.2d 695(¶ 12) (Miss.2003). The legal structure in which a chancellor should place the evidence in custody modification proceedings is as follows: “[T]he non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child’s welfare; and (3) that the child’s best interests mandate a change of custody.” Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997).
¶ 7. Alex argues that the chancellor applied an erroneous legal standard in modifying' the physical custody of his minor daughter, Laken, in that the court found that neither party had produced sufficient proof to show a substantial and material change in circumstances that adversely affected the child’s welfare. Alex maintains that, although the court used the term “primary physical visitation” and not the term “primary physical custody,” the chancellor, in fact, modified the physical custody of Laken after having found that there had been no sufficient proof that a substantial and material change in circumstances, which adversely affected the child’s welfare, had occurred.
¶ 8. Sandra counters that the chancellor did not modify physical custody of the child but defined or clarified the terms of joint custody of the original decree. Sandra maintains that the chancellor recognized the issue not as one of change in custody but one of a joint custody arrangement where the best interest of the child could be served.
¶ 9. We agree with Alex. Although the court referred to the change as an adjustment of the visitation schedule and awarded Sandra what the court called “primary physical visitation” as opposed to “primary physical custody,” the conclusion is inescapable that the court changed the custody of the minor child from joint custody and placed the physical custody of the minor child with Sandra.
¶ 10. In the order changing the custody arrangement, the trial court stated the following:
[T]the proof, offered by both parties is insufficient to show a material and substantial change of circumstances; however, the Court finds that the best interest of the parties’ minor child, named, Laken Paige Johnson, a female child born on November 25, 1998, would be served by adjusting the visitation schedule by awarding primary physical visitation to the [mother].
After finding that there had been no material and substantial change in circumstances, the chancellor then ordered the following:
A. Every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. commencing on Friday, September 26, 2003.
B. From 9:00 a.m. until 6:00 p.m. on New Years’ Day, Easter Sunday, Memorial Day, July 4th, and Labor Day, alternating said holiday each year.
C. From 12:30 p.m. until 8:00 p.m. on Monday of each week until August 1, 2004.
*371 D. For two (2) days during the Thanksgiving holiday each year.
E. For one (1) week during the Christmas holidays each year with the parties alternating Christmas Day each year at 9:00 a.m., and with Plaintiff having custody of the parties’ minor child on Christmas Day in odd-numbered years.
F. From 9:00 a.m. until 6:00 p.m. on Father’s Day and on his birthday each year, regardless of the weekend schedule, and with Plaintiff having custody on Mother’s Day and her birthday each year, regardless of the weekend schedule.
G. For one-half of the minor child’s birthday each year.
H. For one-half of the “spring break” as recognized by the child’s school district, once she becomes enrolled.
I. For six (6) weeks during the summer months to be exercised two weeks in May, June, July and August each year,' to be agreed upon between the parties, not to interfere with the child’s school.
J. At any and all other times upon which the parties may agree.
The chancellor' also ordered Alex to pay Sandra monthly child support in the amount of $340.20.
¶ 11. Regardless of the terminology utilized in the order, the trial court’s order in essence modified the original decree as to custody. We are unwilling to hold that a chancellor may modify custody without finding the requirement of a substantial and material change in circumstances that adversely affects the child’s welfare. Accordingly, we find that the chancellor abused his discretion in modifying the custody arrangement. Therefore, we reverse and render.
¶ 12. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND' LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.