# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00394-COA

**MEAGAN PHILLIPS**                                    **APPELLANT**

**v.**

**RICHARD PHILLIPS**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2019 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | TERRY L. CAVES<br>JOSEPH MASON WOOD |
| ATTORNEYS FOR APPELLEE: | BARRON CRUZ GRAY<br>THOMAS T. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND RENDERED - 09/15/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Meagan Phillips and Richard Phillips entered into an agreed order of modification on or about June 23, 2017. The agreed order of modification allowed for the parties' two minor children to move to New York with Richard and pursue acting careers and related training. The agreed order allowed the parties to evaluate the minor children's progress after one year. The parties could not reach an agreement as to visitation and asked the chancery court to intervene. The chancellor modified custody without finding any material change in circumstances adversely affecting the children and without conducting an *Albright*[1] analysis.

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

Aggrieved by the chancellor's decision, Meagan appeals. Finding that the chancellor committed reversible error by modifying custody without a finding of a material change in circumstances adversely affecting the children or conducting an *Albright* analysis, we reverse and render the chancellor's order.

## FACTS AND PROCEDURAL HISTORY

¶2.    Meagan and Richard were divorced on July 20, 2015, citing irreconcilable differences. The parties shared physical and legal custody of their two minor children, K.P. (born in 2007), and T.P. (born in 2009). In 2016, Meagan enrolled their two sons in an acting program in Clinton, Mississippi. Meagan and Richard began talking about how to allow their sons to further pursue acting. In June 2017 Meagan and Richard agreed to send their children to a film academy in New York, New York. On June 23, 2017, the chancellor signed off on the parties' mutually agreed upon order of modification.

¶3.    The order of modification stated that Richard would be allowed to take the children to New York for one year beginning July 1, 2017. While in New York, the children would attend a film academy and pursue acting full-time. Richard would be responsible for all costs associated with the care of the minor children while in New York. Meagan would be allowed to visit the children anytime she desired. Meagan was responsible for any costs associated with her travel to and from New York. The agreement further stated that either child was free to change his mind about living in New York and return to Mississippi. At the end of one year, the parties would "re-evaluate the children's living arrangement." In effect, the agreement expired after one year, and absent another mutual agreement, the parties would

2

revert to the previous custody agreement.

¶4. Richard and the parties' two minor sons moved to New York. Pursuant to the agreement, Richard home-schooled both children during this time.[2] After three months, Meagan decided she no longer wanted the boys to remain in New York. On September 8, 2017, Meagan filed a motion to set aside the agreed order of modification. On February 26, 2018, Meagan filed a motion to set aside the agreed order of modification and other related relief.[3] On March 15, 2018, Richard filed a counter-complaint for re-evaluation pursuant to the agreed order of modification of June 23, 2017.[4]

¶5. A hearing was held on July 18, 2018, to review the agreed order of modification. The chancellor noted that the parties voluntarily entered into the subject agreed order. In his ruling from the bench, the chancellor stated that "[u]nder the terms of the agreement, the parties were supposed to discuss the arrangement at the end of one year. Obviously, that didn't happen so this Court is called upon to intervene and decide what's in the best interest of these children." The chancellor heard testimony from Meagan, Richard, and both children that Meagan only went to New York once during the year to visit her children. The

---

[2] The record is clear, based upon the testimony at the July 18, 2018 hearing, that both children were progressing academically. In fact, according to test results, the children tested at a higher level than their grade level.

[3] In the motion, Meagan alleged that Richard sold land owned by the parties that was to be used for the benefit of the children. Richard stated that he did not sell the land but instead sold some timber on the property to pay for the children's training in New York.

[4] Richard stated that the children were doing well in New York and wanted to abide by the decision to stay in New York for the year.

chancellor also noted that the children were not being told to avoid their mother, as Meagan claimed during her testimony. The testimony was clear that the children regularly spoke with their mother by phone. It was also clear that both children were adjusting well to the home school program. In fact, test scores illustrated that they were progressing ahead of schedule with their education.

¶6.     The chancellor found that "it is also clear, Meagan admits, that the children are enjoying their time in New York. They do not want to return to Mississippi. They want to continue to stay in New York and pursue an acting career." The chancellor noted that the evidence supported letting the children stay in New York because "[t]hey have been in acting schools. They have been in various productions. They have earned money from their acting." The chancellor concluded that "the children are doing well in their chosen career. They are making progress. That's what they want to do. I'm going to let them continue to do that."

¶7.     The chancellor ended the hearing by addressing visitation:

> Now the problem we have is visitation with the mother. The plane tickets are expensive. I want you attorneys to sit down and confer with each other and with your clients and try to figure out a schedule when the children can come to Mississippi to visit with their mother and how you're going to share the cost of that transportation.
>
> Actually, it's going to be easier for Meagan to go to New York to visit with the children than for them to come down here. It'll be less expensive if she's the only one flying.
>
> So I don't have a solution for you on that. The original agreement was that Meagan could come to see them anytime she wanted to in New York. And so she made it. I didn't. That's the ruling of the Court.

The chancellor did not set the terms for Meagan's visitation. The parties were directed to

4

work out an agreement. The chancellor did not enter any final judgment or written order.

¶8. On or about November 9, 2018, Meagan filed a motion for the court to determine visitation. In paragraph 2 of the motion, Meagan states that "the COURT instructed the parties to work out the movant's visitation with the minor children." The motion states in paragraph 3 that "all other provisions of the agreed order of modification of June 23, 2017 remain in full force and effect." It is clear from this motion that the only issue remaining between the parties as of November 9, 2018, was visitation. Paragraph 4 of Meagan's motion states that "after attempts to resolve the issue of visitation, the parties are unable to reach an agreement and it has become necessary for the court to decide said issue." A hearing on the issue of visitation, as specifically raised in Meagan's motion, was held on December 13, 2018.

¶9. At the conclusion of the hearing, the chancellor stated, "[A]ll right. Here's what we're going to do, we'll follow through with the Christmas visitation. He'll pay for the tickets for that. Thereafter, once a month they come to Mississippi to visit with their mother and the parties share the cost of the tickets." Regarding visitation by phone, Meagan argued that she was unable to speak with the children by phone. The chancellor found no evidence of this and stated specifically, "I'm seeing communication that she's having with the children." Meagan's attorney wanted something more specific on the record concerning telephone communication and the chancellor obliged by stating, "I just ruled. She can call them anytime she wants to. She doesn't have to ask his permission."

¶10. On January 20, 2019, the chancellor entered an order concerning visitation, which was

requested by Meagan in her motion. The chancellor's order functioned as a permanent modification of custody. Aggrieved, Meagan filed her notice of appeal on February 27, 2019 seeking appellate review of "Order of Modification [66] entered by the Clerk of this Court on January 31, 2019 in the above-referenced cause."

## STANDARD OF REVIEW

¶11.    "This Court will not disturb a chancellor's findings of fact when supported by substantial evidence unless the [chancery court] abused [its] discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Anderson v. Anderson*, 8 So. 3d 264, 267 (¶7) (Miss. Ct. App. 2009). "However, questions of law are reviewed de novo." *Id*.

## DISCUSSION

¶12.    Meagan filed her notice of appeal on February 27, 2019, seeking appellate review of "Order of Modification (66) entered by the Clerk of this Court on January 31, 2019 in the above-referenced cause." On appeal Meagan claims the chancellor erred in modifying custody. Specifically, Meagan argues the chancellor committed reversible error by modifying custody in July 2018 and giving Richard primary physical custody of the two children. Meagan argues the chancellor applied an erroneous legal standard, failed to find a material change in circumstances that adversely affected the minor children, and failed to properly apply the *Albright* factors. Richard argues that the hearing on December 13, 2018, and subsequent order filed on January 31, 2019, did not modify custody.

¶13.    "When this Court reviews domestic relations matters, our scope of review is limited

6

by the substantial evidence/manifest error rule." *Giannaris v. Giannaris*, 960 So. 2d 462, 467 (¶8) (Miss. 2007). "Therefore, we will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id*. (Internal quotation mark omitted).

¶14.    Our Supreme Court has stated: "The test for modification of child custody is: (1) whether there has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody." *Id*. At 467-68 (¶10) (footnotes omitted) (emphasis omitted)). The Supreme Court has further held that these are not optional requirements. *See Lackey v. Fuller*, 755 So. 2d 1083, 1088 (¶24) (Miss. 2000).

¶15.    Mississippi courts will reverse a decision when a chancellor fails to follow the "test" or "prerequisites" discussed above:

> [T]his Court reversed a chancellor's decision to modify child custody, because the chancellor failed to identify a specific change in circumstances that adversely affected the welfare of the child, and the chancellor failed to conduct an on-the-record analysis of the *Albright* factors. This Court concluded that it was appropriate to reverse the chancellor's judgment and remand the matter to the chancellor for further proceedings.

*Roberts v. Roberts*, 110 So. 3d 820, 830 (¶31) (Miss. Ct. App. 2013).  Likewise, in *Johnson v. Johnson*, 913 So. 2d 368 (Miss. Ct. App. 2005), this Court held:

> Regardless of the terminology utilized in the order, the trial court's order in essence modified the original decree as to custody. We are unwilling to hold that a chancellor may modify custody without finding the requirements of a substantial and material change in circumstances that adversely affects the child's welfare.

*Id*. at 371 (¶11). The same requirements apply in cases in which the parties initially share

7

joint physical custody. *Porter v. Porter*, 23 So. 3d 438, 447 (¶23) (Miss. 2009).

¶16.    Prior to June 2017, the parties shared joint physical and legal custody of their two minor children. The June 2017 "Agreed Order of Modification" was effectively a temporary modification of physical custody. The order was temporary because it allowed Richard to take the children to New York for one year only. This temporary modification of custody expired by its own terms on July 1, 2018. "At the conclusion of the one-year period, being on July 1, 2018, the parties [were to] re-evaluate the living arrangements of the children." In essence, after one year, the parties agreed to either extend the modification or revert to the terms of the original agreement. The chancellor, by allowing the children to remain in New York, made a temporary order permanent. Similar to *Johnson*, discussed above, this was in effect a permanent modification of the parties' original custody agreement.

¶17.    After hearing the parties' arguments, the chancellor permanently modified custody— by granting Richard physical custody—without first finding any material change in circumstances that adversely affected the minor children. In the absence of a new agreement by the parties, the temporary order simply expired on July 1, 2018, and custody of the children should have returned to the status quo under the original divorce decree, i.e., joint physical and legal custody. We are required to reverse the modification of custody due to the chancellor's failure to find any material change in circumstances having an adverse effect on the minor children and the absence of an *Albright* analysis.

¶18.    We reverse the decision of the chancellor and render that custody return to that of the parties' original judgment of divorce, i.e., joint physical and legal custody.

¶19.    **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**