# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00195-COA

**GARET URBAN**                                                                          **APPELLANT**

**v.**

**TINA URBAN**                                                                             **APPELLEE**

DATE OF JUDGMENT:                    01/21/2022
TRIAL JUDGE:                              HON. D. NEIL HARRIS SR.
COURT FROM WHICH APPEALED:    JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         GARET URBAN (PRO SE)
ATTORNEY FOR APPELLEE:           TINA URBAN (PRO SE)
NATURE OF THE CASE:                 CIVIL - CUSTODY
DISPOSITION:                            AFFIRMED - 09/05/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1.    Garet Urban and Tina Urban were married, but after six years, they divorced in January 2020.  The divorce decree entered by the chancellor granted Tina sole legal and physical custody of their minor child.  In March 2021, Garet petitioned for a modification of child custody.  After a hearing, the chancellor modified custody, awarding the parties joint legal custody, with Garet having physical custody of their child.  Within ten days, however, Tina moved to alter or amend the judgment.  After a hearing, the chancellor entered a final judgment of custody and visitation, returning sole legal and physical custody of their minor child to Tina.  Garet appeals from the final judgment.[1]  Finding no error, we affirm.

---

[1] Despite his duty to designate, examine, and supplement the appellate record with evidence relevant to the issues presented on appeal, Garet has failed to include key

**FACTS AND PROCEDURAL HISTORY**

¶2. On December 19, 2019, Tina filed a "Complaint for Divorce and Complaint Seeking Temporary Restraining Order and Preliminary Injunction" against Garet in the Jackson County Chancery Court. On January 16, 2020, the chancellor granted the divorce based on habitual cruel and inhuman treatment because Garet (1) watched pornography and refused to have relations with Tina; (2) abused Tina by picking the bathroom lock while she bathed; (3) abused alcohol; (4) deprived Tina of financial support; and (5) occasionally told Tina to shut up. The divorce decree granted Tina sole legal and physical custody of their minor child, Brittany,[2] and ordered Garet to pay child support. Garet was given alternating weekend visitation and holiday visitation on varied odd- and even-numbered years.

¶3. On April 20, 2020, Tina filed an emergency request for the court to suspend Garet's visitation, alleging he was engaged in inappropriate sexual behavior. In May 2020, Tina filed a petition for contempt against Garet for failure to pay child support. Garet filed a cross-petition for contempt against Tina for prohibiting his visitation.

¶4. On June 16, 2020, the chancellor heard Tina's emergency request for suspension of Garet's visitation. At the hearing, the chancellor appointed a Guardian Ad Litem (GAL) because of the sexual allegations made against Garet. During the hearing, Garet agreed to undergo a psychological sexual examination. Tina agreed that if the examination results

documents, transcripts, and exhibits from the trial court proceedings. *See* M.R.A.P. 10(a)-(b), (e) & 11(a). The facts in this opinion are summarized accordingly.

[2] We use a pseudonym to protect the minor's identity and privacy.

"clear[ed] him of proclivity," she would permit visitation. Sometime later, Garet's sexual examination results were presented to the chancery court. The results indicated that Garet's behavior "was not outside normalcy."

¶5. On August 18, 2020, the GAL's report was submitted to the chancellor. Although the GAL's report has not been made a part of our appellate record, in a later hearing on January 21, 2022, Tina's attorney conveyed to the court that the GAL had recommended for Garet to have physical custody of Brittany because Tina had been home-schooling Brittany, along with her other children, during COVID-19.

¶6. Also missing from our appellate record are the subsequent temporary orders entered by the chancellor in August 2020, September 2020, and November 2020. As for the August 2020 temporary order, the docket entry reads that the chancellor granted both Tina and Garet legal custody but awarded Garet physical custody, with him also having final decision-making authority for medical and or education issues. In September 2020, the chancellor entered a second temporary order. The court filing indicates that the September 2020 order granted Tina "regular visitation." In November 2020, the chancellor entered a third temporary order. The court filing indicates that the November order awarded Tina "daily visitation . . . via FaceTime calls."

¶7. On December 29, 2020, the chancellor entered a fourth temporary order. This temporary order awarded Tina "primary physical custody" of Brittany and awarded Garet visitation in accordance with the divorce decree (alternate weekends). The temporary order

3

does not contain the chancellor's reasoning for temporarily modifying custody. Testimony from a later hearing, however, reflects that while Brittany had been in Garet's custody, Garet had not been taking Brittany to her counseling sessions every week, as ordered by the court. Additionally, Brittany had accrued seven school absences and tardies. Moreover, the GAL changed the recommendation to allow Tina to have custody because "Garet [had been] ostracizing the child from the mother [and] upsetting the child." A report reflecting the GAL's changed recommendation has not been provided.

¶8. On March 11, 2021, Tina filed a "Complaint for Contempt, Modification, and Other Relief." On March 26, 2021, Garet filed a "Motion for Contempt, Modification, and Other Relief." Summonses were served by both Tina and Garet pursuant to Mississippi Rule of Civil Procedure 81. On March 29, 2021, the Rule 81 summons served on Garet was returned executed. The chancellor scheduled both matters to be heard on April 9, 2021. Garet's and Tina's contempt pleadings are absent from the record. On April 9, 2021, Garet moved to continue the scheduled hearing. The same day, the chancellor entered an order rescheduling the hearing to June 16, 2021. On April 29, 2021, the chancellor relieved the GAL of all further duties.

¶9. On June 6, 2021, Garet successfully moved to continue the June 16, 2021 hearing. On June 16, 2021, the chancellor modified Garet's visitation. The chancellor changed Garet's visitation from alternate weekends to every first, third, and fifth weekend. On June 18, 2021, the chancellor continued the June 16, 2021 hearing to October 21, 2021, and

mailed Garet notice of the continuance. Later, the chancellor reset the October 21, 2021 hearing to October 8, 2021.[3] On September 24, 2021, Garet separately filed both a "Motion for Contempt and Request Assistance from the Court" and a "Motion to Modify Visitation." The chancellor noticed these motions to be heard on October 8, 2021, as well.

¶10. At the October 8, 2021 hearing, Garet's wife, Ashley Urban, testified it was in Brittany's best interest to live with Garet because Brittany has her own room and privacy there. Brittany also had clothes there and was well cared for. Whereas, at Tina's home, Brittany was allegedly living with two families in a three-bedroom home, which purportedly was causing Brittany to have anxiety. On the other hand, Brittany's maternal grandfather, John Cresswell, testified that when Garet was given sole custody of Brittany in August 2020, Brittany reacted to the news with "horrific crying" because she did not want to live with Garet.

¶11. Garet testified that he and his wife, Ashley, were unemployed. Furthermore, he had not been employed since April 17, 2021, and he was $36,000 past due on his home's mortgage. Garet said he was unable to pay the child support currently owed to Tina because he no longer had an annual income of $165,000 as he once did when he was a "chief

_____

[3] Before the October 8, 2021 hearing could occur, Garet filed an "Emergency Petition to Modify Custody" on August 2, 2021. On August 13, 2021, the chancellor heard Garet on the emergency petition. During the hearing, Garet testified Brittany was in danger of being physically injured. The chancellor told Garet that the court needed proof of physical or emotional abuse, "not just [his] raw statements." After permitting Garet to testify for "two hours," the chancellor dismissed Garet's petition because "there [was] nothing [t]here."

5

engineer."

¶12. On November 23, 2021, the chancellor signed a final judgment modifying custody. The chancellor granted Tina and Garet joint legal custody of Brittany, with Garet having "primary physical custody," without stating the reasons for modifying custody and without applying the *Albright* factors.[4] The chancellor also denied Tina's petition for contempt. The chancellor refused to hold Garet in contempt when he was unemployed. Instead, the chancellor ordered Tina to pay $200 per month in child support. And because Garet owed Tina back child support, the chancellor ruled that Tina's child support would from there on "be credited against the amount" he owed.

¶13. On December 3, 2021, Tina moved to alter or amend the judgment or for a new trial under Mississippi Rule of Civil Procedure 59(e) and separately filed a notice of hearing. In the Rule 59(e) motion, Tina asserted that Garet had not shown a material change in circumstances since the issuance of the original custody decree. Tina further alleged that Garet had failed to prove that a custody modification was in Brittany's best interest. The chancellor scheduled a hearing on the Rule 59(e) motion for December 16, 2021. On December 15, 2021, Garet moved to strike Tina's Rule 59(e) motion. In the motion to strike, Garet requested the court to apply sanctions to Tina and her counsel because they were filing motions for the purpose of harassing him. *See* M.R.C.P. 11.

¶14. By court order, the chancellor reset the December 16, 2021 reconsideration hearing

_____

[4] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

6

to January 4, 2022. On January 4, 2022, by court order, the chancellor rescheduled the hearing to January 12, 2022. This order also stated, "Mr. Urban shall appear." On January 18, 2022, the chancellor again entered an order rescheduling the hearing to January 21, 2022.

¶15. On January 21, 2022, a hearing was held on Tina's Rule 59(e) motion. Although Garet did not appear at the hearing, the chancellor commenced the proceedings. That day, Tina argued Garet's actions were not in Brittany's best interest. Tina asked the court to revise the judgment, return custody to Tina, and award Garet visitation.

¶16. On January 21, 2022, the chancellor entered his revised final judgment, which included the following:

> In the above-styled and numbered cause, this Court changed custody of the minor child . . . from the Plaintiff, Tina Urban (hereafter "Tina") to the Defendant, Garet Urban (hereafter "Garet"). This was error. The Court hereby sets aside the Judgment entered November 23, 2021, wherein the Court awarded physical custody of the minor child to Garet.
>
> Sole legal and physical custody of the minor child is hereby restored to and vested in Tina.

Garet appeals from the final judgment of custody and visitation entered on January 21, 2022.

## STANDARD OF REVIEW

¶17. "This Court will not disturb a chancellor's findings of fact when supported by substantial evidence unless the chancery court abused its discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Phillips v. Phillips*, 303 So. 3d 835, 839 (¶11) (Miss. Ct. App. 2020) (quoting *Anderson v. Anderson*, 8 So. 3d 264, 267 (¶7) (Miss. Ct. App. 2009)). "However, questions of law are reviewed de novo." *Id*. (quoting

7

*Anderson*, 8 So. 3d at 267 (¶7)).

## DISCUSSION

¶18.    Garet, pro se, appeals the denial of his petition for a modification of custody. Although Garet is without representation, "pro se parties [are] held to the same rules of procedure and substantive law as represented parties." *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 118 (Miss. 1987); *accord Robinson v. Newsome*, 88 So. 3d 767, 769 (¶4) (Miss. Ct. App. 2011). "Regardless, appellate courts generally afford pro se litigants some degree of leeway on appeal." *Robinson*, 88 So. 3d at 769 (¶4).

¶19.    Additionally, Tina has not filed an appellate brief in response. But Tina's failure to respond does not require "automatic reversal." *Selman v. Selman*, 722 So. 2d 547, 551 (¶13) (Miss. 1998); *see Leblanc v. Leblanc*, 271 So. 3d 494, 502 (¶37) (Miss. Ct. App. 2018). "In particular, we will review the record despite the appellee's failure when the interests of children are at stake." *Leblanc*, 271 So. 3d at 502 (¶37) (citing *Garceau v. Roberts*, 363 So. 2d 249, 250 (Miss. 1978)). "However, the 'failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of [the appealing party], that there was no error.'" *Id.* (quoting *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (¶12) (Miss. 2012)); *accord Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997).

¶20.    Garet assigned twenty-six points of error. However, many of them are "nothing more

than assertion[s]" that do not preserve his claims.[5] *See United States v. Dunkel*, 927 F.2d 955, 955 (7th Cir. 1991). Because "[j]udges are not like pigs, hunting for truffles buried in briefs," Garet's issues have been condensed due to their lack of authority or repetitive nature. *Id*. Thus we review Garet's remaining issues below.

### I. Whether Garet received sufficient service for the Rule 59(e) motion.

¶21. Garet's first argument is two-fold. Garet argues that this Court should treat Tina's Rule 59(e) motion as a petition for modification. Garet further argues that he should have been served a Rule 81 summons, and absent the summons, the chancellor lacked jurisdiction.

¶22. Garet's argument is not persuasive. "When reviewing questions concerning jurisdiction, this court employs a de novo review." *Sanghi v. Sanghi*, 759 So. 2d 1250, 1252 (¶7) (Miss. Ct. App. 2000). A review of our precedent shows no express authority in support of Garet's argument that a Rule 59(e) motion should be treated as a petition for modification.

¶23. Appellate courts have the responsibility to "disregard the label or title attached to a pleading or motion and look to its content." *Bruce v. Bruce*, 587 So. 2d 898, 902 (Miss. 1991) (citing *Williams v. Mason*, 556 So. 2d 1045, 1050 (Miss. 1990); *Shannon v. Henson*,

---

[5] In his brief, Garet raises the issue of Tina being awarded a 2013 Subaru as marital property. However, the record reflects that Garet filed a notice of appeal from the chancellor's January 21, 2022 revised final judgment of custody and visitation and not the November 23, 2021 judgment that addressed this item of personal property. Therefore, this Court will not review this issue. *See Marquar v. Schweda*, 326 So. 3d 1008, 1018 (¶42) (Miss. Ct. App. 2021); *accord* M.R.A.P. 3(c) ("The notice of appeal shall . . . designate as a whole or in part the judgment or order appealed from.").

499 So. 2d 758, 762 (Miss. 1986), *superseded on other grounds by* Miss. Code Ann. § 23-15-927 (Rev. 2018); *Peeples v. Yarbrough*, 475 So. 2d 1154, 1156-57 (Miss. 1985); *Moore v. Moore*, 451 So. 2d 226, 227 (Miss. 1984); *Thornton v. Breland*, 441 So. 2d 1348, 1349 (Miss. 1983)).  When examining the contents of the motion, our appellate decisions have treated some motions as complaints or petitions.  *Powell v. Powell*, 644 So. 2d 269, 274 (Miss. 1994) (treating a "motion for modification" as a new action); *Pearson v. Browning*, 106 So. 3d 845, 849 (¶17) (Miss. Ct. App. 2012) (treating a "motion for contempt" as a petition).  However, in those decisions, we treated "motions for contempt" and "motions for modification" as complaints or petitions because the "motions" were reigniting dormant proceedings.  *See Magee v. Magee*, 754 So. 2d 1275, 1281 (¶15) (Miss. Ct. App. 1999) ("The initiation of such actions should be by filing 'complaints' or 'petitions' and 'counterclaims' or 'cross-claims' (whichever might be appropriate), not 'motions' as was done in this case."); M.R.C.P. 81(d)(3) & cmt. ("Initiating Rule 81(d) actions by 'motion' is not intended."); 1 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 5:23 (updated May 2023).

¶24.   As we have explained before,

> [a] domestic relations case remains subject to recurring motions even after all prior contested matters are resolved.  A pleading to alert the other party that a ***new dispute*** has arisen is in the ***nature of awakening a dormant suit***, ***distinguishable*** both from commencing new litigation ***and from just filing a motion in active litigation***.  The applicable procedural rule is one that applies to petitions to modify or enforce ***final*** custody or alimony or support judgments.

*Sanghi*, 759 So. 2d at 1253 (¶13) (emphasis added) (citing M.R.C.P. 81(d)(2)).

10

¶25. This Court emphasized this point in *Garrison v. Courtney*, 304 So. 3d 1129, 1154 (¶93) (Miss. Ct. App. 2020). In *Garrison*, which involved a divorce and subsequent contempt "motion," we explained:

> The parties' divorce was not a '***dormant suit***,' and a '***final***' judgment of divorce had not been entered. Rather the motion for contempt was filed in a ***pending*** divorce in which [the respondent] had answered in response to a summons issued on [the plaintiff's] original complaint for divorce.

*Id.* (emphasis added).

¶26. Thus, a Rule 81 summons may be required when an action is dormant and the contents of the motion, touching one of the subjects listed under Rule 81, raises a new dispute that would modify the final judgment or requests enforcement of the final judgment. Absent these circumstances, chancery courts will "maintain personal jurisdiction over parties in relation to [the] recurring motions." *Chasez v. Chasez*, 935 So. 2d 1058, 1061 (¶9) (Miss. Ct. App. 2005) (citing *Powell*, 644 So. 2d at 274 n.4). But the Rule 59(e) motion Tina filed did not revive a dormant action and raise a new Rule 81 issue.

¶27. A Rule 59(e) motion to alter or amend does not modify or enforce a final judgment because it has the legal effect of suspending the judgment. *See Dixon v. Dixon*, 238 So. 3d 1191, 1201 (¶33) (Miss. Ct. App. 2018). "Rule 59(e) motions go directly to the merits of a decision and affect its finality." *Sweet Valley Missionary Baptist Church v. Alfa Ins. Corp.*, 124 So. 3d 683, 687 (¶15) (Miss. Ct. App. 2013). "[A] judgment is not final until the court has disposed of the pending Rule 59 motion." *Id.* "[T]he judgment 'might appear to be a final judgment,' but it is not final." *Id.*

11

¶28. A Rule 59(e) motion is also not filed in litigation where the matter has been dormant. First, the motion must be filed within ten days of the judgment. *Bruce*, 587 So. 2d at 903. "Second, Rule 59(e) motions go to the heart of the matter to those issues predicate to a decision on the merits." *Id*. "A Rule 59(e) motion is the functional equivalent of a motion for a new trial or, on appeal, of a petition for rehearing." *Id*. at 904. The Rule 59(e) motion's purpose is to "urg[e] reconsideration of matters properly encompassed in a decision on the merits." *Id*. (internal quotation marks omitted).

¶29. Tina filed her Rule 59(e) motion within ten days of the November judgment that granted Garet physical custody. Thus, once Tina filed her Rule 59(e) motion, the judgment was not final—it was suspended until the disposition of the motion. Hence, the child-custody matter was not dormant. It was pending. In addition, Tina's Rule 59(e) motion did not address any new issues. She requested that the chancellor reconsider granting custody to Garet because he had not shown that a modification of custody was warranted. Given that Tina's Rule 59(e) motion did not reignite a dormant action and that the contents of the motion did not raise a new issue, we conclude that Tina's Rule 59(e) motion was not a petition for modification requiring a Rule 81 summons. Accordingly, the chancery court maintained personal jurisdiction over Garet.

## II. Whether Tina met her burden of proof under Rule 59(e).

¶30. Garet contends that Tina did not meet her burden of proof under Rule 59(e). "When hearing a motion under Rule 59(e), a trial court proceeds de novo, if not *ab initio*. . . . Rule

59(e) provides the trial court the proverbial chance to correct its own error [so] that we may pretermit the occasion for a less than divine appellate reaction." *Bruce*, 587 So. 2d at 904. "Put otherwise, the trial court has considerably broader discretionary authority under Rule 59(e) to grant relief than it does under Rule 60(b)." *Id*. For such reasons, this Court reviews a chancellor's grant or denial of a motion to alter or amend under Rule 59(e) for abuse of discretion. *Hunt v. Allen*, 291 So. 3d 1125, 1131 (¶13) (Miss. Ct. App. 2020) ("[W]e will not reverse absent an abuse of discretion or if allowing the judgment to stand would result in a miscarriage of justice.").

¶31.　"The movant under Rule 59 bears a burden considerably lesser than a movant under Rule 60(b)." *Singleton v. Buford*, 282 So. 3d 493, 498 (¶16) (Miss. Ct. App. 2019). "In order to succeed on a Rule 59(e) motion, the movant must show: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Hunt*, 291 So. 3d at 1131 (¶13).

¶32.　Tina evidenced a need to correct a clear error of law. Tina showed that a mistake had been made when she informed the chancellor that there had been no showing of a material change in custody that adversely affected Brittany or that a change in custody was in Brittany's best interest.

¶33.　It is well-settled that before a chancellor may modify child custody, the chancellor must find that there has been a material change in circumstances that adversely affects the

13

child. *Page v. Graves*, 283 So. 3d 269, 275 (¶24) (Miss. Ct. App. 2019). Only after the chancellor finds a material change adverse to the child, must the chancellor consider the *Albright* factors and make on-the-record findings. *Page*, 283 So. 3d at 275 (¶24) (citing *Albright*, 437 So. 2d at 1005). "Mississippi courts will reverse a decision when a chancellor fails to follow the 'test' or 'prerequisites' discussed above[.]" *Phillips*, 303 So. 3d at 840 (¶15). This Court held that it was "unwilling to hold that a chancellor may modify custody without finding the requirements of a substantial and material change in circumstances that adversely affects the child's welfare." *Id*. (quoting *Johnson v. Johnson*, 913 So. 2d 368, 371 (¶11) (Miss. Ct. App. 2005)).

¶34.    For example, we reversed a chancellor's decision to permanently modify custody after ordering a temporary change in custody that expired on a set date. *Id*. at 840 (¶16). In that case, per the divorce decree, the parties originally shared physical and legal custody of their two children. *Id*. The parties later entered into a temporary agreement allowing the father to take the children to New York for one year. *Id*. The chancellor then granted the father permanent custody of the children without finding a material change in circumstances that adversely affected the children. *Id*. at (¶17). We reversed the ruling, reasoning that "the custody of the children should have returned to the status quo under the original divorce decree . . . ." *Id*. We held the chancellor erred for failing to find any material change in circumstances that adversely affected the children and for failing to conduct an *Albright* analysis. *Id*.

14

¶35. In this case, the chancellor permanently modified custody on November 23, 2021, but failed to find a material change in circumstances that adversely affected Brittany. Thus, the November order, on appellate review, would have resulted in reversal. *Wall v. Wall*, 350 So. 3d 620, 626 (¶17) (Miss. Ct. App. 2022); *Butler v. Mozingo*, 287 So. 3d 980, 984 (¶14) (Miss. Ct. App. 2019); *Sturgis v. Sturgis*, 792 So. 2d 1020, 1025 (¶19) (Miss. Ct. App. 2001).

¶36. However, the chancellor cured his own error. *Bruce*, 587 So. 2d at 904. On January 21, 2022, the chancellor revised his November 23, 2021 order granting Garet custody. In the final judgment, the chancellor returned sole legal and physical custody to Tina. The chancellor clearly cured his own legal error by revising the modification order and returning sole legal and physical custody of Brittany to Tina as it was in the divorce decree. There is no evidence in the record to show that a modification of custody was warranted. In the November order, the chancellor had failed to make on-the-record findings of the material change in circumstances that had adversely affected Brittany. The chancellor had also failed to conclude that a change in custody was in the best interest of Brittany. But the chancellor corrected the errors. Accordingly, we affirm the chancellor's decision.

### III. Whether Tina committed fraud on the court, and whether the chancellor was negligent or biased.

¶37. Garet asserts that the chancellor acted negligently by permitting Tina, on multiple occasions, to commit fraud on the court. Garet also asserts that Tina has "stolen" his documents and made misrepresentations to the court. Garet further alleges that Tina has "drugged" him before and that the chancellor was biased toward Tina.

15

¶38. "It is well settled that issues presented for the first time on appeal are procedurally barred from consideration." *Wood v. Miller*, 179 So. 3d 48, 50 (¶11) (Miss. Ct. App. 2015). In *Wood*, the appellants did not raise "any claim related to concealed fraud" and we found that the issue was procedurally barred. *Id*.

¶39. The same is true for Garet's claims of fraud and bias. Because the chancellor did not have an opportunity to fully address these allegations, the facts have not been adequately developed. Thus, we decline to address Garet's allegations of fraud on the merits and find Garet's claims of fraud and bias are procedurally barred.

### IV. Whether the chancellor erred by admitting hearsay.

¶40. Garet argues that the chancellor erred by admitting hearsay evidence. "When the hearsay goes into evidence without objection, the trial court has no opportunity to evaluate the proffered testimony under M.R.E. 803(24), or any other exception." *Rubenstein v. State*, 941 So. 2d 735, 764 (¶113) (Miss. 2006). Thus, the failure to object to hearsay operates as a waiver of the issue on appeal. *Id*.

¶41. Garet does not assert which pieces of evidence were hearsay or on what occasion hearsay was improperly admitted. The record reflects that Garet did not object to the admission of any evidence as hearsay. We therefore find that Garet waived this issue.

### V. Whether the chancellor should have invoked equitable estoppel against Tina.

¶42. Garet argues that the chancellor should have prevented Tina from making her arguments. "A party asserting equitable estoppel must show (1) that he has changed his

16

position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct." *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 206 (Miss. 1984). "[I]t must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done." *Id*.

¶43. When an appellant provides "no meaningful argument or citation to relevant authorities to support and develop his issues on appeal," the issue is procedurally barred. *Reading v. Reading*, 350 So. 3d 1195, 1200 (¶21) (Miss. Ct. App. 2022) (citing M.R.A.P. 28(a)(7)). "Issues cannot be decided based on assertions from the briefs alone. The issue must be supported and proved by the record." *Id*. at (¶22).

¶44. Garet has not stated how Tina has induced him or how he has suffered due to a change in his position. Garet has not provided any evidence for this Court to conclude that Tina should have been estopped from making any argument. Because Garet does not properly support this argument, this issue is procedurally barred.

### VI. Whether the chancellor erred when he refused to adopt the GAL's recommendation.

¶45. Garet next asserts that the chancellor failed to adhere to the appointed GAL's recommendation to award him custody. However, Garet has not provided this Court with copies of the GAL's report for this Court to make such a determination. *See Cage v. State*, 149 So. 3d 1038, 1046 (¶23) (Miss. 2014). Garet carries the duty of providing this Court with the appropriate materials for review. *Abercrombie v. Abercrombie*, 282 So. 3d 763, 772 (¶32) (Miss. Ct. App. 2019) (explaining that the appellant must "designate the necessary

17

transcripts, pleadings, and information for inclusion in the record"). Thus, we decline to address whether the chancellor should have adopted the GAL's recommendations. *Pennington v. Dillard Supply*, 858 So. 2d 902, 903 (¶¶4-7) (Miss. Ct. App. 2003).

## CONCLUSION

¶46. Finding no error, we affirm the chancellor's judgment denying Garet's petition for a modification of custody. Custody shall remain with Tina as outlined in the divorce decree.

¶47. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**